896 F.2d 723
 Mark WALDORF, Appellant in No. 89-5818, Cross-Appellee in
Nos. 88-5789, 88-5797, 88-5817
v.
Edward J. SHUTA, Carolyn Wood, Kenneth C. Spence, Jr., Mark
Kay Spence, The Borough of Kenilworth, a municipal
corporation of the State of New Jersey, Joseph Rego, Henry
J. Moll, Victor Smith, Lawrence Stickle, Charles David,
Joseph Ventre, Thomas Neville, William J. Ahern, William E.
Conrad, Livio Mancino, Gary Rowinsky, Mario DiBella, Vincent
Scorese, Harry Grapenthin, Mary Kelly, Richard McCormack,
William Holt, A. Zeleniak, Richard Lomax, C. William
Gutekunst, Frederick Bailey, Michael Padula, Charles
Scheuerman, Fred Sues, Joseph Walyuf, Thomas McHale, Philip
Ernst, Frank J. Mascaro, Walter E. Boricht, Jr., Albert
Simmenroth, James E. O'Brien, Frank J. Johdof, Michael Bury,
Peter S. Patuto, Raymond Blydenburgh, Edward Kasbarian, John
J. O'Lock, Edmac Enterprises, Edward McDermott.
Appeal of Joseph REGO.
Appeal of the BOROUGH OF KENILWORTH.
Appeal of Kenneth C. SPENCE, Jr.
 Nos. 88-5789, 88-5797, 88-5817 and 89-5818.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 27, 1989.
Decided Feb. 7, 1990.
 
 Randall J. Richards (argued), of counsel, Alison Wholey Mynick, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for appellant.
 Robert A. Goodsell (argued), of counsel, Charles R. Church, John A. Stone, Mary H. Post, David L. Epstein, Irwin and Post, P.A., Roseland, N.J., for appellee, the Borough of Kenilworth.
 Paul J. Hirsh, of counsel, Steven Backfish, (argued), John C. Whipple, Whipple, Ross, & Hirsh, P.A., Madison, N.J., for appellee, Joseph Rego.
 Before HIGGINBOTHAM, STAPLETON and SCIRICA, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This case presents an appeal and cross-appeals from an $8,400,000 jury verdict awarded a plaintiff who was rendered quadriplegic in a motor vehicle accident. Defendants the Borough of Kenilworth, New Jersey, and one of its police officers, Joseph Rego, appeal several issues of liability and damages.[1] The plaintiff, Mark Waldorf, appeals partial summary judgments in favor of the Borough of Kenilworth on two issues. We will affirm in part, reverse in part, vacate in part and remand for a new trial.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 The district court had diversity jurisdiction over this case under 28 U.S.C. Sec. 1332(a). The plaintiff is a citizen of New York and all the defendants are citizens of New Jersey. We have jurisdiction of the appeal under 28 U.S.C. Sec. 1291.
 
 
 3
 Waldorf's tragic accident occurred at approximately 11:45 P.M. on Wednesday, November 17, 1982, at the four-way intersection of Monroe Ave. and North Fourteenth St. in the Borough of Kenilworth, New Jersey [hereinafter "Borough"]. II Joint Supplemental Appendix [hereinafter "JSA"] 282-83. On the night of the accident, the red light facing west at the intersection failed. II JSA 1223-24, 1262. Corporal Victor Smith of the Kenilworth police department discovered that the red light was out at approximately 11:00 P.M., when he was driving to the police station on his way to work. He radioed police headquarters to report the malfunction to his supervisor Lieutenant Joseph Rego. II JSA 1225. Smith tried to get the light to work and then to switch it to blinking mode, but he failed in both efforts. II JSA 434-39, 1223-30. The intersection had little traffic on week nights and there was none during the time Smith was at the intersection observing and trying to fix the light. II JSA 442, 529, 1241, 1305-06. Smith radioed police headquarters to report the malfunction to his supervisor Lt. Joseph Rego and proceeded to the station.
 
 
 4
 Lieutenant Joseph Rego, a twenty-one year veteran of the Kenilworth Police Department, was the officer in charge on the 11:00 P.M. to 7:00 A.M. shift on the night of the accident. II JSA 1319-20, 1331. Under his command were two other police officers, Corporal Smith and Patrolman Henry Moll. Rego assigned them to other duties that he considered more urgent than the intersection with the non-functioning red light. As soon as Corporal Smith got to the station, Rego ordered him to assist Moll in arresting Phillip Mathias. Mathias, whom Moll had seen outside a local tavern, was the subject of an outstanding bench warrant in an assault case. II JSA 531-32, 1237, 1326-27. It was standard police procedure in the Borough to use two police officers to make an arrest. II JSA 531-32, 1327. As soon as Smith and Moll got back to the station, Rego sent them to a hospital in a neighboring town to pick up a drunk driver who had been injured in an automobile accident. He had been arrested and taken to the hospital earlier by an officer who had gone off duty at 11:00 P.M. The hospital had notified Rego that the patient was ready for release into their custody, and the police department had a policy of picking up arrestees from the hospital as soon as they were able to be moved. II JSA 505, 546, 1332-33. Shortly after they arrived at the hospital, Smith and Moll received a radio call from Rego about the accident involving Waldorf. II JSA 1348.
 
 
 5
 Mark Waldorf was a passenger in a Dodge van, driven by Kenneth Spence, which was travelling south on 14th Street in Kenilworth. He was sitting in the back of the van on a bench that was not bolted down and was secured only by elastic straps. II JSA 261-62. Edward Shuta was driving a Datsun Sedan east on Monroe Ave. at the same time. II JSA 1168. The intersection of 14th and Monroe was controlled by a traffic signal mounted from a mast arm overhanging the intersection. It had only one signal head with one set of the usual red, yellow and green lights facing in each direction. II JSA 435. The signal head was also equipped with a flashing motor and manual override. II JSA 438.
 
 
 6
 The light was green facing Spence, and he proceeded into the intersection at approximately 20-25 miles per hour. II JSA 284. Shuta testified that he saw a green light in his direction as he was crossing some railroad tracks that are 237 feet from the intersection. II JSA 1168, 1176-77. He stated that he did not observe the light change to yellow, nor did he notice that the red light was not working. II JSA 1177. A passenger in Shuta's car testified that she had observed that the red light was not working, but that she did not have time to warn Shuta before the accident occurred. II JSA 1016, 1018. The vehicles collided and Waldorf was thrown from his seat on the bench in the rear of the van. The bench struck his head; his neck was broken and his spinal cord was crushed, rendering him quadriplegic. II JSA 1499-1500, 1540-41.
 
 
 7
 Waldorf sued the Borough of Kenilworth, Corporal Smith, Lt. Rego, and the drivers of the two vehicles.[2] The court granted partial summary judgments to the Borough on two issues on grounds of immunity under the New Jersey Tort Claims Act, N.J.Stat.Ann. Secs. 59:1-1 to 59:12-3 (West 1982), and denied it partial summary judgment under the Act on a third issue. The jury found the Borough 60% liable for its failure to provide emergency signaling devices, Lt. Rego 25% liable for his negligent deployment of police personnel once he had learned of the signal failure, Edward Shuta 10% liable for his negligent driving, Kenneth Spence 5% liable for his improper installation of the bench in his van, and Corporal Smith not liable at all. I JSA 7. Waldorf appeals the partial summary judgments in favor of the Borough and the Borough and Lt. Rego appeal various findings of liability and damages.
 
 II. DISCUSSION
 
 8
 In an appeal, we would normally consider first the issues raised by the appellant/cross-appellee, and then consider those raised by the appellees/cross-appellants. In this case, however, Mark Waldorf has conceded that his appeal of the two summary judgments in favor of the Borough would be moot if the other liability issues appealed by the Borough were upheld. We shall therefore consider first the three liability issues appealed by the Borough to see whether we need to reach the issues raised by Waldorf. The issues and the order in which we shall discuss them are as follows: (1) whether the district court erred in refusing to grant partial summary judgment to the Borough on the issue of its failure to provide police with emergency signaling devices; (2) whether it improperly instructed the jury as to the burden of proof on that issue; and (3) whether it erred in allowing inconsistent liability verdicts to stand. Then we shall review the two partial summary judgments appealed by Mark Waldorf. Those judgments were based on the district court's findings (4) that the Borough had immunity with regard to its installation of a traffic light with only one signal face in each direction, in violation of New Jersey law and (5) that it had immunity with regard to its lack of a preventive maintenance program for servicing the light. Next, we shall consider two liability issues appealed by defendant Joseph Rego: (6) that the liability verdict against him was contrary to the weight of the evidence and (7) that the court erred in its jury instructions regarding the vicarious liability of the Borough for his actions. Finally, we shall review two issues of damages appealed by both the Borough and Joseph Rego: (8) that the district court erred in allowing evidence as to Mark Waldorf's future earnings as an attorney and (9) that improper remarks in the closing statement by plaintiff's counsel that referred to a dollar amount to be awarded for plaintiff's pain and suffering require that a new trial be held.
 
 
 9
 A. BOROUGH IMMUNITY REGARDING FAILURE TO PROVIDE EMERGENCY WARNING DEVICES
 
 
 10
 The Borough claims that the district court erred in failing to grant summary judgment in its favor on the issue of its liability for its failure to equip police with portable emergency signaling devices. It contends that it has immunity for its decision not to provide the devices under the New Jersey Tort Claims Act, N.J.Stat.Ann. Secs. 59:1-1 to 59:12-3 (West 1982). Our standard of review as to the grant or denial of a summary judgment motion is plenary; we apply the same test that the district court would apply. Hynson v. City of Chester Legal Dept., 864 F.2d 1026, 1028-29 (3d Cir.1988). Inferences drawn from the evidence presented to the trial court "must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The moving party can prevail in its motion for summary judgment only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Our standard of review as to the district court's interpretation of the substantive law of the state in which it sits is also plenary. Compagnie des Bauxites v. Insurance Co. of North America, 724 F.2d 369, 371 (3d Cir.1983).
 
 
 11
 The Act declares that "the public policy of this State [is] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J.S.A. Sec. 59:1-2. Waldorf claims that the Borough's liability is governed by N.J.S.A. Sec. 59:4-2, which reads in pertinent part:
 
 
 12
 A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that ...;
 
 
 13
 ....
 
 
 14
 b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
 
 
 15
 Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
 
 
 16
 N.J.S.A. Sec. 59:4-2. The Borough apparently does not contest that the malfunction of the traffic light created a dangerous condition nor that the kind of injury that occurred was a reasonably foreseeable risk created by that dangerous condition. Nor does the Borough claim that it had inadequate notice of the malfunction. The Borough asserts, however, that its failure to equip police cars with emergency signalling devices was a discretionary decision for which it has immunity under another section of the Act, which states:
 
 
 17
 A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services; ...
 
 
 18
 N.J.S.A. Sec. 59:2-3(c)[3].
 
 
 19
 Waldorf challenges the Borough's claim that the district court erred in failing to recognize its immunity. He argues that in order to qualify for immunity under N.J.S.A. Sec. 59:2-3(c), the Borough must prove that it actually exercised its discretion in making the decision, not simply show that it failed to appropriate any money. In support, he cites Costa v. Josey, 83 N.J. 49, 415 A.2d 337 (1980), where the plaintiff alleged that the Department of Transportation negligently resurfaced a state highway, thereby causing a barrier separating opposing traffic to be lowered and creating a dangerous situation. The Department argued that it was entitled to immunity under N.J.S.A. Sec. 59:2-3(a)[4], but failed to present to the court affirmative proof of its alleged exercise of discretion. The court there said that
 
 
 20
 immunity is contingent upon proof that discretion was actually exercised ... by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice.... Moreover, subsumed within the principle that the public entity is immune when it exercises its discretion with respect to basic policy, is the necessity for demonstrating that there has in fact been an exercise of that discretion. Here, for example, assuming that a basic policy matter was involved, there is nothing to indicate that any competing policy choices were actually considered when the resurfacing plan was made and approval given.
 
 
 21
 Id. at 59-60, 415 A.2d at 342-43. The court notes that section 59:2-3 was meant to codify law supporting the view that only high-level policy determinations are entitled to immunity and cites Willis v. Dep't of Conservation & Economic Development, 55 N.J. 534, 264 A.2d 34 (1970), Amelchenko v. Freehold Borough, 42 N.J. 541, 201 A.2d 726 (1964), Bergen v. Koppenal, 52 N.J. 478, 246 A.2d 442 (1968), and Fitzgerald v. Palmer, 47 N.J. 106, 219 A.2d 512 (1966). Costa v. Josey, 83 N.J. at 55-56, 415 A.2d at 341.
 
 
 22
 Waldorf argues that under Costa the Borough is not entitled to subsection 59:2-3(c) immunity unless it presents evidence that it actually considered the available options and made a choice not to equip its police with emergency signalling devices. The Borough claims that because Costa involved the more general language of subsection 59:2-3(a), the burden of proving that an exercise of discretion took place does not apply here. We do not agree. In interpreting the language of section 59:2-3, Costa made clear that
 
 
 23
 subdivision (a) should be read in conjunction with the areas of protected discretion expressly outlined in subparagraphs (b), (c) and (d). All the subsections should be read consistently, each with respect to the subject of the others. These subparagraphs are signposts to understanding the nature of immunized discretionary determinations.
 
 
 24
 Id. at 54-55, 415 A.2d at 340. In Costa, subsections (b), (c) and (d) of N.J.S.A. Sec. 59:2-3 did not apply, so the court relied on subsection 59:2-3(a). However, the whole thrust of the court's reasoning in interpreting subsection (a) was to insure that its construction "would be in harmony with subparagraphs (b) through (d)". Id. We can therefore see no merit in the Borough's contention that Costa imposed a more demanding burden of proof regarding the exercise of discretion on the public entity for violations of subsection (a) than it did for violations of subsection (c).
 
 
 25
 In the instant case, in order to qualify for immunity, the Borough has to show that its failure to equip its police with emergency signaling devices was the result of a policy-making decision involving the balancing of competing interests, rather than the result of a failure to consider the question. It has to show that "the policy maker consciously exercised discretion in the sense of assuming certain risks to gain other policy objectives." Id. 415 A.2d at 342 (citing Johnson v. State, 69 Cal.2d 782, 447 P.2d 352, 73 Cal.Rptr. 240 (1968)).
 
 
 26
 The Borough claims that to require proof that discretion was exercised would paralyze government officials with fear of liability for decisions they did not expressly record but which were clear and implicit in their actions. Reply Brief for Borough at 15. It may be a burden, but we do not think it is an impossible one. We contemplate no paralysis. Routine minutes of a Borough meeting should record not only what action was taken, but whether any alternatives were considered. In any case, we understand New Jersey law to say that public entities are not entitled to immunity for every activity in which they engage, only for ones in which they can demonstrate their exercise of discretion. Since the Borough offered no evidence supporting its claim that its failure to provide emergency signalling devices was a discretionary decision, a material fact remains as to whether that failure was actually a discretionary decision of the kind immunized by the Act under N.J.S.A. Sec. 59:2-3. We will therefore affirm the district court's denial of summary judgment on this issue.
 
 B. JURY INSTRUCTIONS
 
 27
 The Borough's next claim of error is that the jury instructions misled the jury as to the burden of proof on the issue of the Borough's liability for its failure to provide emergency warning devices at the intersection. Incorrect jury instruction as to the burden of proof "is 'fundamental and highly prejudicial' and requires a new trial." Batka v. Liberty Mutual Fire Insurance Co., 704 F.2d 684, 690 (3d Cir.1983) (quoting Ostrov v. Metropolitan Life Insurance Co., 379 F.2d 829, 838 & n. 10 (3d Cir.1967)); see Connecticut Mutual Life Ins. Co. v. Wyman, 718 F.2d 63 (3d Cir.1983).
 
 
 28
 The jury found the Borough liable on two grounds. It found the Borough indirectly liable, under section 59:2-2(a)[5] of the New Jersey Tort Claims Act, for the liability of its police officer Lt. Joseph Rego under section 59:3-2(d) in his allocation of police personnel after he had been notified of the accident ("resource allocation liability").[6] It also found the Borough directly liable, under section 59:4-2 of the Act, for its failure to provide police with emergency signalling devices ("dangerous condition liability"), as discussed in the preceding section. On the issue of resource allocation liability under section 59:3-2(d), the parties agree that the defendant has the burden of proving as an affirmative defense that his actions in allocating resources are not palpably unreasonable. Under the second charge, dangerous condition liability under section 59:4-2, the plaintiff Mark Waldorf has the burden of proving the palpable unreasonableness of the Borough's actions, for it is "an essential and necessary element of the statutory cause of action under N.J.S.A. 59:4-2...." Fox v. Township of Parsippany-Troy-Hills, 199 N.J. Super. 82, 91, 488 A.2d 557, 561, cert. denied, 101 N.J. 287, 501 A.2d 949 (1985); Kolitch v. Lindedahl, 100 N.J. 485, 493, 497 A.2d 183, 187 (1985).
 
 
 29
 The Borough claims that the trial judge incorrectly instructed the jury that the defendants had the burden of proof as to palpable unreasonableness on both counts of liability. Waldorf does not disagree as to where the burden of proof should lie, but claims that the judge did not wrongly instruct the jury. He asserts that the jury instructions were accurate and adequate.
 
 
 30
 In its brief, the Borough relies in part on two sources that were not presented to the jury: a colloquy between the court and the Borough's attorney and the court's tentative draft of jury instructions.[7] These sources revealed some uncertainty on the part of the court as to where the burden of proof should rest. Clearly, we should review only the charge as given to the jurors, and not statements that were never communicated to them.[8] The actual jury instructions contained the following passages relevant to the issue of the burden of proof on the two claims of liability discussed above:
 
 
 31
 1. Instructions regarding the "palpably unreasonable" standard
 
 
 32
 Concerning the "palpably unreasonable" standard, the court explained,
 
 
 33
 This is a breach of conduct beyond that of the duty of ordinary care (negligence). It comprises conduct that is capricious, arbitrary, whimsical or outrageous in regard to the decisions of public servants. For a defendant to have acted or failed to act in a manner that is palpably unreasonable, it must be plain and obvious that no prudent person would approve of such course of action or inaction.
 
 
 34
 When this defense is asserted the burden of proof shifts from the plaintiff to the defendant asserting the defense that its conduct was not palpably unreasonable.
 
 
 35
 I JSA 116.
 
 
 36
 As noted below in the section discussing instructions on defenses, the judge correctly described the standard the defendant must then meet when asserting the lack of palpable unreasonableness as a defense. The issue is whether the court correctly and clearly instructed the jury as to when the question of palpable unreasonableness or its absence is part of the plaintiff's case and when it is a defense. We think it did not.
 
 
 37
 2. Instructions on resource allocation liability
 
 
 38
 On this charge, both sides agree that the court correctly stated that the burden of proof was on the defendant. The court enumerated four elements that the plaintiff had to prove to sustain a violation under the statute and went on to say that even if the plaintiff were to establish the four factors, "he could not recover against the Borough of Kenilworth if the action it took or failed to take to protect against the condition was not palpably unreasonable." I JSA 127. In its summary, the court made clear that the burden of proof was on the Borough:
 
 
 39
 If after this analysis you are satisfied that the plaintiff has proved to you all of the elements I have spoken of, and the Borough has not persuaded you that its conduct was not palpably unreasonable, then you should find the Borough and Lieutenant Rego liable to the plaintiff.
 
 
 40
 I JSA 129. The importance of this charge, which the Borough does not challenge, is that it was followed immediately by the instructions on dangerous condition liability, which the Borough does challenge; it therefore may have influenced the jury's understanding of those instructions, which we discuss next.
 
 
 41
 3. Instructions on dangerous condition liability
 
 
 42
 On this issue, unlike on resource allocation, the burden as to whether or not the defendant's behavior was palpably unreasonable was on the plaintiff. Here again, the court enumerated four elements of the plaintiff's claim. The court's statement of the elements did not include that the plaintiff had to prove that the Borough's behavior was palpably unreasonable. The court then went on to say:
 
 
 43
 Once again, as previously stated, even if the plaintiff were to prove these four elements by a preponderance of the credible evidence, he would not recover against the Borough or any of its police officers for failure to provide such signals unless the Borough's action or inaction was palpably unreasonable.
 
 
 44
 I JSA 130 (emphasis in original).
 
 
 45
 The jury instructions in this section do not state explicitly which side had the burden of proof as to palpable unreasonableness. However, in failing to state that it is one of the elements that the plaintiff has to prove, the court implies that palpable unreasonableness is part of the defense. This suggestion was reinforced by the court's reference to its "previously stated" instructions on resource allocation liability. Waldorf claims that the court clarified who had the burden of proof in its instruction regarding defenses, quoted below. We do not agree.
 
 4. Instructions regarding defenses
 
 46
 The district court gave the following instruction on the defenses to the resource allocation and dangerous condition claims:
 
 
 47
 The Borough asserts that none of its police officers acted wrongfully. It also asserts that its discretionary allocation of resources in the face of competing demands was reasonable and it has fulfilled its burden of proof in demonstrating that its conduct was not palpably unreasonable.
 
 
 48
 It further contends that it is not liable for failure to provide emergency warning signals, since the dangerous condition, if it existed, was readily apparent to and should have been anticipated by a person exercising due care. Thus, the failure to prove all the elements required by the statute creates an immunity for the Borough and it is not required to demonstrate its action or lack of action was palpably unreasonable.
 
 
 49
 I JSA 133; II JSA 1877.
 
 
 50
 We do not believe that this statement makes clear that the plaintiff has the burden of proof with regard to palpable unreasonableness on the charge of dangerous condition liability. To the contrary, we find that it reinforces the idea that on both grounds of liability the Borough has the burden of proving that its behavior was not palpably unreasonable. We consider it quite possible that the jury was misled by the instructions in the second paragraph into thinking that only if the plaintiff failed to prove "all the elements" was the Borough relieved of its obligation to prove that its action was not palpably unreasonable. The second paragraph suggests that if the plaintiff did prove all the elements, (elements which, as stated by the court, did not include proving that the Borough's behavior was palpably unreasonable) then the Borough had to prove that its action was not palpably unreasonable. We conclude, therefore, that the district court erred in instructing the jury as to the burden of proof on dangerous condition liability and that its instructions constituted reversible error.
 
 
 51
 All the judges on this panel have had substantial experience as trial judges. With the multifaceted theories of the plaintiff, the myriad defenses and the shifting burdens of proof, we recognize that this was a difficult case in which to present each separate issue and defense with "textbook" clarity. The issue whether the instructions constitute reversible error was a much closer question than other issues in this case on which we find reversible error. It is with some reluctance that we reverse the trial judge for his instructions to the jury. We recognize that there is no perfect litmus paper test that will tell us whether the jury's verdict would have been any different if the instructions that we now say should have been given had, in fact, been given.[9]
 
 
 52
 Particularly when dealing with instructions to the jury where we read a remote record, there is no perfect precision in identifying reversible error or in ascertaining whether the error was prejudicial.[10] The consequences of this case are enormous to all the parties and there is no absolute certainty with which an appellate court can truly determine whether an instruction on the burden of proof misled the jury, but, as a panel, we must follow the binding precedent of the court. Batka, 704 F.2d 684, 690. Accordingly, we must vacate the judgment of liability against the Borough and remand for a new trial.
 
 C. INCONSISTENCY OF VERDICTS
 
 53
 The Borough contends that the jury's finding of liability against it for the failure to provide emergency signaling devices was inconsistent as a matter of law with its determination that the driver of the car facing the non-functioning red light was negligent. While we will vacate that liability verdict against the Borough, the jury may return the same verdict in a new trial. To avoid another appeal on this issue, we shall therefore consider the question of whether the two verdicts are inconsistent as a matter of law. Our review of this question is plenary. See Malley-Duff & Associates v. Crown Life Ins. Co., 734 F.2d 133, 144-45 (3d Cir.1984). In predicting the New Jersey Supreme Court's interpretation of state law in order to determine the scope and meaning of the findings of liability that are claimed to be contradictory, our standard of review is also plenary. See Compagnie des Bauxite v. Insurance Co. of North America, 724 F.2d 369, 371 (3d Cir.1983).
 
 
 54
 The verdict against the Borough hinged on the jury's finding that a "dangerous condition" of which the Borough had notice existed at the time of the accident. The term "dangerous condition" is defined by the Act as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. Sec. 59:4-1(a). The jury found that the red light outage was such a condition, that the Borough had notice of this condition, and that the Borough was therefore liable for not having provided emergency signalling devices for placement at the intersection. I JSA 5, II JSA 1927-28. The specific section of the statute which was found to have been violated provides as follows:Subject to section 59:4-2 of this act,[11] a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
 
 
 55
 N.J.S.A. Sec. 59:4-4 (footnote added).
 
 
 56
 In addition to finding the Borough 60% liable for Waldorf's injury because of its failure to provide emergency signalling devices, the jury also found Edward Shuta, the driver of the car facing the malfunctioning light, 10% liable. The Borough contends that these two verdicts are inconsistent, and that a new trial is therefore warranted. It argues that in finding Shuta negligent, the jury necessarily found that he had failed to exercise due care in approaching and proceeding through the intersection when the red light was out. The Borough claims it follows that if Shuta did not use due care, then it cannot be found in violation of section 59:4-2, which requires only that a public entity make conditions safe for a person who is using due care.
 
 
 57
 Waldorf, in response, points out that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved in that way." Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). He argues that while the jury found Shuta negligent in the operation of his vehicle, it did not specify that he was negligent in failing to pay attention to the traffic signal.[12] Waldorf notes that evidence relating to several other theories of Shuta's negligence was presented to the jury: that he was speeding; that he failed to observe approaching traffic; and that he failed to take appropriate evasive action when he did see the other vehicle. II JSA 1014, 1016, 1164, 1177, 1183, 1200-01. Thus, the jury could have believed that Shuta's negligence on entering the dangerous intersection was under one or more of these theories, and that his negligence, combined with the Borough's creation of the dangerous condition, resulted in the collision. Under this reading of the jury's findings, Waldorf argues, there is no inconsistency.
 
 
 58
 The Borough counters that a finding of Shuta's negligence under any of the theories proposed by Waldorf would still make the finding that the Borough was liable inconsistent. The Borough's argument seems to be that, under New Jersey law, if a person fails to exercise due care in any respect that contributes to the accident, i.e., not only with regard to the observance of the non-functioning traffic light, but also with regard to speed, to the awareness of other traffic, and to the taking of evasive action when he becomes aware of the traffic, then the Borough is not liable. Borough's Reply Brief at 8.
 
 
 59
 We find this construction of the statute strained and unconvincing, and the Borough offers no support for it.[13] The Act provides that a public entity is liable for injury proximately caused by its failure to provide emergency signals if they were necessary to warn of "a dangerous condition ... which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." N.S.J.A. Sec. 59:4-4. A more reasonable construction of the statute is that where a person exercises all due care with regard to noticing and anticipating the specific "dangerous condition" for which the Borough should have erected warnings, the Borough is liable. Under our reading, if a person were using all due care with respect to his awareness or anticipation of that specific dangerous condition (here the red light outage), then the Borough may be found liable even if the person were found negligent in some other respect that contributed to the accident. For example, the jury might have believed Shuta's testimony that he had exercised all due care with respect to watching the road ahead of him when he failed to notice that the light was out. It might also have concluded that he was negligent in speeding. It might have found that both the speeding and the "dangerous condition" were causes of the accident.
 
 
 60
 As we interpret the Act, we find that there is a plausible reading of the jury's findings that does not make them inconsistent. Under Atlantic and Gulf Stevedores, 369 U.S. 355, 82 S.Ct. 780, we are bound to find that such a reading is the correct one. We will affirm the district court's ruling that the verdicts are not inconsistent as a matter of law.
 
 
 61
 D. BOROUGH IMMUNITY AS TO INSTALLATION OF THE TRAFFIC LIGHT
 
 
 62
 Because the judgment against the Borough will be vacated, the two issues raised by appellant Waldorf are not moot and must now be considered. In both instances, Waldorf challenges partial summary judgment in favor of the Borough under the Tort Claims Act. Both issues involve questions of law that are subject to our plenary review.
 
 
 63
 The first is Borough immunity for installation of the traffic light. Waldorf claims that the court erred in granting summary judgment for the Borough on his claim that the Borough negligently installed a traffic light with only one signal face in each direction. Waldorf maintains that the Borough is liable for the negligent design and installation of the traffic light in violation of state law. Appellant's Brief at 14-26. In New Jersey, the type of traffic light that may be installed is governed by a U.S. Government manual on traffic control devices (U.S. Dept. of Commerce, Manual on Uniform Traffic Control Devices for Streets and Highways (June 1961)) [hereinafter "the Manual"], which was adopted by the Director of the Division of Motor Vehicles on January 2, 1962, pursuant to N.J.Stat.Ann. Sec. 39:4-120 (West 1982). The Manual provides in section 3B-12 that "[t]here shall be a minimum of two vehicular signal faces visible to traffic on each approach to a signalized intersection." Manual, at 167. The traffic light at the intersection of 14th and Monroe was installed pursuant to a Borough ordinance passed on May 8, 1962, some four months after New Jersey's adoption of the Manual. The light had only one signal face in each direction, contrary to the Manual's directions.
 
 
 64
 The district court based its grant of summary judgment on the ordinance authorizing the installation of a traffic light. The court asserted that the ordinance was "a legislative act for which the defendants are immune" under N.J.S.A. Secs. 59:2-3 and 59:3-2.[14] Appellant's Brief, App. at 20. Both sections of the New Jersey statute cited by the district court provide immunity for the exercise of judgment or discretionary activities. Waldorf claims that the ordinance passed by the Borough regarding the traffic light in question cannot provide immunity for the Borough's installation of a traffic light with only one signal face because the ordinance does not speak to that issue at all. We agree.
 
 
 65
 The ordinance in question is not legislative action regarding the type of traffic light to be installed. It says nothing at all about the design of the light. It simply appropriates $2800 for the installation of "a traffic light" at the intersection of 14th St. and Monroe Ave. There is still a material question of fact whether the Borough made a discretionary decision, of the kind that qualifies for immunity under section 59:2-3 or 59:3-2 of the Act, to provide a traffic light with only one signal face in each direction.[15] We are aware of no evidence that has been presented on this question. The fact that a particular type of light was installed does not in itself show that the matter was decided, or even that it was considered. For reasons discussed above, the exercise of discretion may not be assumed, but must be demonstrated.[16] Accordingly, we will reverse the grant of summary judgment and remand for trial on the issue of the Borough's installation of a single headed traffic light.[17]
 
 
 66
 E. BOROUGH IMMUNITY AS TO A PREVENTIVE MAINTENANCE PLAN
 
 
 67
 Waldorf also appeals the summary judgment for the Borough on the issue of the preventive maintenance of the traffic light. Waldorf claimed that the Borough was liable for its failure to maintain the traffic light by replacing the bulbs in advance of their expected expiration, as recommended by the Manual.[18] He argues that the Borough thereby incurred liability under N.J.S.A. Sec. 59:4-2 for creating a dangerous condition that proximately caused the injury.
 
 
 68
 The Borough, in moving for summary judgment, claimed immunity under N.S.J.A. Sec. 59:2-3(c), which provides:
 
 
 69
 A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services; ...
 
 
 70
 In granting the Borough's motion, the district court agreed with its claim that it had immunity for its discretionary decision not to provide the resources for a preventive maintenance program. Waldorf argues that the Borough did, after all, have a type of preventive maintenance program, but that it was a sporadic and ineffective one. Whenever Borough maintenance workers changed a light bulb that had burned out, they also changed the other bulbs on the traffic signal. Appellant's Brief, App. at 88-89.
 
 
 71
 The Borough strongly contests the characterization of its workers' activities in changing all the bulbs on a traffic signal when one burned out as a preventive maintenance program. The issue, however, is not the label one puts on the workers' activities but, rather, what the Borough actually decided with regard to appropriation of resources. Did it make a discretionary decision not to appropriate the resources for a preventive maintenance program (or to appropriate resources only for the changing of all the bulbs when one burned out but not for a more systematic program), or did it simply fail to consider the question? Here, as with regard to its failure to provide emergency warning devices, and its installation of a traffic light with a single signal head in each direction, the Borough has not met its burden of showing that it actually exercised its discretion in such a way as to qualify for immunity under section 59:2-3(c) of the Act. Costa v. Josey, 83 N.J. 49, 59-60, 415 A.2d 337, 342-43 (1980); Fox v. Township of Parsippany-Troy-Hills, 199 N.J.Super. 82, 488 A.2d 557, 562 (1985). We will therefore reverse the district court's summary judgment and remand for trial on the issue of the Borough's liability for creating a dangerous condition by failing to implement a preventive maintenance program.[19]
 
 
 72
 F. SUFFICIENCY OF THE EVIDENCE REGARDING LT. REGO'S LIABILITY
 
 
 73
 Officer Joseph Rego claims that the evidence on which the jury found him 25% liable for Waldorf's injury was insufficient to sustain the verdict against him. The trial court disagreed and denied his motion for a new trial or a remittitur.[20] We normally review the denial of a motion for a new trial for abuse of discretion, but when the denial is based on the application of a legal precept, our review is plenary. Honeywell v. American Standards Testing Bureau, 851 F.2d 652, 655 (3d Cir.1988). See also Link v. Mercedez-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir.1986) (quoting Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir.1985)).
 
 
 74
 The claim on which Lt. Rego's motion was based, that the jury's finding of his liability was against the great weight of the evidence, is essentially a claim that the evidence was legally insufficient to sustain the verdict. The district court's denial of the motion was therefore based on the application of a legal precept, and is thus subject to plenary review.
 
 
 75
 Lt. Rego's alleged liability arises under N.J.S.A. Sec. 59:2-3, regarding public entity liability for discretionary activities. Subsection (d) states:
 
 
 76
 A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was not palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.
 
 
 77
 N.J.S.A. Sec. 59:2-3(d).
 
 
 78
 Waldorf claims that Rego's conduct as police officer in charge on the night of the accident constituted palpably unreasonable actions and the jury agreed.[21] This claim was based on the fact that Rego sent the only two police officers under his command to make two successive arrests between 11:00 and 11:45 P.M., rather than sending one or both of them to the intersection where the accident occurred. There was conflicting testimony as to whether Rego tried to call a maintenance worker to fix the light before the accident, but since both sides agreed that at least one police officer would have been needed to assist in the changing of the bulb, that issue is not separate from the allocation of police personnel. The verdict form that the jury was given asked only one question regarding Lt. Rego: "Was Lieutenant Rego's exercise of discretion as a shift commander, with regard to his utilization of police personnel, in the face of competing demands, palpably unreasonable and if so, was such conduct a proximate cause of the accident and plaintiff's injury?" The jury decided that it was.[22]
 
 
 79
 Lieutenant Rego contends that his discretionary decision to send the only police officers under his command to make the arrests, rather than to direct traffic at the intersection, was not, as a matter of law, palpably unreasonable. In order to be "palpably unreasonable" under New Jersey law, actions must be the result of "capricious, arbitrary, whimsical or outrageous decisions of public servants." Williams v. Phillipsburg, 171 N.J.Super. 278, 286, 408 A.2d 827, 831 (App.Div.1979). Rego submits that it would have been outrageous had he allowed his officers to take an extended coffee break rather than guard the intersection or whimsical if he had permitted them to patrol the streets, leaving the intersection unmanned. However, he argues that it was not outrageous or whimsical or capricious or arbitrary for him to use standard police procedure to effect two arrests instead of sending his men to the intersection. He acknowledges that his actions can certainly be criticized in hindsight. Brief for Rego at 30. They may even have been a mistake at the time. Rego notes, however, that he does not have to show that his conduct was perfect, preferred, or even reasonable, only that it does not reach the standard of palpable unreasonableness needed to overcome immunity. Brief for Rego at 32.
 
 
 80
 The New Jersey Supreme Court has concluded that the term "palpably unreasonable" implies behavior that is "patently unacceptable under any given circumstances." Kolitch v. Lindedahl, 100 N.J. 485, 493, 497 A.2d 183, 187 (1985). When applied to a decision regarding the allocation of police personnel, we take this to mean that, regardless of the consequences of the decision, it is clear that the decision was patently unacceptable when it was made. As to Rego's decision to send his officers to make two arrests rather than to guard the intersection, is it clear that it would always be patently unacceptable, regardless of the consequences, to send police officers to make arrests rather than to guard a quiet intersection with a non-functioning red light? We think not. If, by making one or both of the arrests when they did, the policemen had saved a life, Rego's allocation of police resources would not now appear to have been palpably unreasonable when made. It might not even look ordinarily negligent.
 
 
 81
 We will not fault Lt. Rego for following police procedure and sending two officers, the only two under his command, to make the arrests rather than one. The realistic alternatives he had were to make the arrests or to guard the intersection.[23] Suppose Rego had sent the officers to the intersection rather than to the bar to arrest the man on whom there was an outstanding warrant for aggravated assault. Suppose that the man who was, as a result, not arrested had picked a fight during which he accidentally broke his opponent's neck, rendering him quadriplegic.[24] There would have been no automobile accident, but Lieutenant Rego might now find himself being sued by another party for his palpably unreasonable allocation of police personnel in sending the officers to the quiet intersection rather than to make the arrest. One can imagine a similar scenario occurring at the hospital where a man who was supposed to be in police custody was left unattended.
 
 
 82
 The New Jersey Superior Court has recognized that the nature of police work is such that judgment must be exercised constantly, and that mistakes are inevitably made.
 
 
 83
 Police officers in the field have to make a myriad of judgment calls in the course of the performance of their everyday duties. While trained to make those decisions, they, like all humans, will make errors of judgment. The question here is to what extent will the law provide immunity for those errors.
 
 
 84
 Morey v. Palmer, 232 N.J.Super. 144, 151, 556 A.2d 811, 814-15 (App.Div.1989). The court was referring to police officers on patrol, but the same applies to those on desk duty who respond to calls by making assignments. They must constantly make judgments as to how to allocate police personnel, and like all human beings, they sometimes make errors of judgment.
 
 
 85
 New Jersey did not intend that its police officers and other officials be held liable for every mistake in judgment, only for truly egregious ones. It has chosen to confer broad immunity on their exercise of discretion unless their judgment is palpably unreasonable. Normally, it is for the jury to decide what is reasonable behavior and what is not. Sometimes, however, they have to apply special standards of reasonableness or unreasonableness and the court has to make certain that they do it correctly. The New Jersey Supreme court has, in Kolitch, set a special standard of palpable unreasonableness and we find that the jury applied it incorrectly in this case. 100 N.J. 485, 497 A.2d 183. When an error of judgment has terrible and tragic consequences, it is perhaps natural to see the error itself as being as great as the misfortune that results. The task for the jury, and the court in evaluating the jury's response, is to separate the reasonableness of the choice at the time it was made from its seeming unreasonableness after the consequences are known. Looking only at the information available at the time the decision was made, we find that Lt. Rego's allocation of police resources on the night of the accident did not meet the legal standard of palpably unreasonable behavior set by the New Jersey Supreme Court in Kolitch. Accordingly, we will reverse the judgment against Lt. Rego and remand to the district court for a new trial.
 
 
 86
 G. JURY INSTRUCTIONS REGARDING THE BOROUGH'S VICARIOUS LIABILITY FOR LT. REGO'S ACTIONS
 
 
 87
 Lt. Rego argues in his brief that the district court improperly instructed the jury as to the Borough's vicarious liability for his actions in allocating police personnel on the night of the accident. Waldorf claims that Rego has waived his right to object now because he did not object at trial.
 
 
 88
 The requirement that we consider only those objections to jury instructions that were raised before the district court reflects the "policy that an appellate court will not predicate error on an issue upon which the district court was not provided with an opportunity to rule." Remington Rand Corp. v. Business Systems, Inc., 830 F.2d 1260, 1267 (3d Cir.1987). An objection must be "sufficiently specific to bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943). These policy requirements were met at trial with regard to a note on the verdict form, but not with regard to other aspects of the jury instructions. Furthermore, it was the Borough who raised the objection on which the trial court ruled, not Lt. Rego.[25] This court has permitted a party to allege error on appeal where the objection at trial was made by counsel for another party. Bailey v. Atlas Powder Co., 602 F.2d 585, 587 (3d Cir.1979).[26] We therefore hold that the objection to the note on the verdict form was adequately raised at trial by the Borough's counsel and that, consequently, Lt. Rego's appeal of this point issue may proceed. For other parts of the jury instructions, where no objection was raised at trial, we hold that insofar as the objection raised here deals with the same issue as was raised with regard to the note on the verdict slip, it can be considered on appeal.
 
 
 89
 We review a district court's rulings on points for the jury charge for abuse of discretion. Bennis v. Gable, 823 F.2d 723, 727 (3d Cir.1987) (citing Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 922 (3d Cir.1986). Once an instruction has been given, our standard of review changes. "At that point, we generally ask ourselves whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury, and reverse 'only if the instruction was capable of confusing and thereby misleading the jury.' " Id. (quoting United States v. Fischbach & Moore, Inc., 750 F.2d 1183, 1195 (3d Cir.1984) (citation omitted), cert. denied, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985)).
 
 
 90
 At a conference with counsel on the jury charge, counsel for the Borough objected to the following note that the district court planned to include in the verdict form:
 
 
 91
 NOTE: Since the Borough of Kenilworth would be responsible for the acts of Corporal Smith and Lieutenant Rego, it is unnecessary to allocate separate liability against the Borough of Kenilworth. However, if you answer questions numbered 5 and 6 "YES", [regarding the failure of the Borough to supply police personnel with portable emergency signaling devices] then you must indicate a percentage of the total liability attributable to the Borough of Kenilworth.
 
 
 92
 I JSA 7-8. The allocation of liability refers to the bottom of the jury slip, where the jury was asked to mark the percentage of liability for each defendant.
 
 
 93
 The note reflected two concerns on the court's part. First, it wanted to make sure that the jurors did not "double count" the Borough's liability for the actions of its officers: if they assigned a percentage of the total liability to the officers and also included the officers' liability in the percentage of liability they assigned to the Borough, then the Borough would be responsible for double its share on this issue. II JSA 1819-20. Second, the court feared that if there were a large verdict for the plaintiff, the jurors would hesitate to assign any liability to a police officer, even if they thought he were at fault, unless they understood that the Borough was also liable for his actions. The court said, "The jury ... will say, my God, Smith is responsible for this kid's $6 million, but I know a policeman from my own experience only makes $20,000. So therefore, God, I'd better not hold against Smith." II JSA 1823. Counsel for the Borough argued that the instruction might have the opposite effect of causing the jurors to "load up" on a police officer. Id. The court's position was that the jurors should do just that, "if they think he's responsible." Id. It therefore included the note in the verdict form, over the objection of the Borough's counsel. As to its ruling to include the note in the verdict form, we hold that the district court did not abuse its discretion. The statement contained in the note correctly represented the law and the district court was justified in including it to assure that the jurors did not assign liability to the Borough for the conduct of its police officers separate from and in addition to the liability that they assigned directly to the police officers. The inclusion of the note was therefore not an error.
 
 
 94
 Let us now consider the entire charge on the issue of the Borough's liability for Rego's actions as it was given to the jury. Lt. Rego contends that the instructions that the court gave concerning the governing law were misleading because they never made clear to the jury that, although the municipal corporation is bound by the acts of its employees,[27] the individual employee is also personally responsible. Brief for Rego at 12, 16-17.
 
 
 95
 In addition to the note on the verdict slip, Rego cites several statements in the jury charge as relevant to this issue. First, early in the charge, the court said:
 
 
 96
 Here, a municipal corporation is involved, and as you're aware, it may only act through natural persons as its agents or employees. In general, any agent or employee of a private corporation may bind the corporation by his or her acts and declarations made while acting within the scope of the authority delegated to the employee of that corporation or within the scope of his duties or her duties as an employee of the corporation. Thus, if an employee acting within the scope of his or her authority is negligent, then such negligence would be attributed to the employer. The law of liability, however, for a public entity differs and will be fully discussed and addressed later in this charge.
 
 
 97
 II JSA 1845. By itself, this suggests that the Borough will be held responsible for the actions of employees as is a corporation, but puts the jury on notice that there are differences and that the law relating to public entity liability will be explained later. Indeed, the court does discuss liability under the New Jersey Tort Claims Act at length later in the charge. I JSA 125-32; II JSA 1866-76. While Rego objects to parts of that discussion, and specifically to the fact that the court focuses on Secs. 59:4-2 and 4-2(b) rather than Sec. 3-2(d) of the Act when discussing the utilization of personnel in the face of competing demands (Brief for Rego at 21-23), we find the discussion of individual liability and public entity liability as a whole to be balanced and not likely to have confused or misled the jury.
 
 Elsewhere in the charge, the court said:
 
 98
 Incidentally, you're going to have to evaluate each Defendant on an individual basis as to whether or not they did violate a standard of conduct and whether it was a proximate cause of Mr. Waldorf's injury....
 
 
 99
 Now, the law provides that if a person is injured by the negligence of two or more persons acting independently but concurrently in causing the injury, each of the wrongdoers is liable to such injured person for the full amount of the injured person's damages.
 
 
 100
 I JSA 118; II JSA 1860.[28] While this section does not refer specifically to the Borough, it does suggest that if Rego were found liable for the palpably unreasonable allocation of police personnel, he would be liable for the full damages award.
 
 
 101
 We find no error in any of these statements nor in the jury instructions as a whole on this issue. Lt. Rego contends that it was error for the court to suggest to the jury that the Borough would pay for his liability in the same way that, under Federal Rule of Evidence 411, it is impermissible to refer to insurance coverage in instructing on liability. We do not agree. The Borough was vicariously liable for Lt. Rego's actions as a matter of law and it was proper for the court to let the jury know that.
 
 
 102
 Lt. Rego is concerned that the instructions failed to make clear that, even though the Borough is vicariously liable for his actions, he personally could be called on to satisfy the entire judgment against himself or the Borough if he were found liable. The jury instructions did state that any party could be liable for the full sum, and we find that is sufficient. If the court had gone out of its way to stress that, in the event that the Borough could not satisfy the judgment, the plaintiff could try to collect the entire award from Lt. Rego, it might have made the jurors wary of entering any verdict against Rego, even if they thought he was responsible. We find that the jury instructions correctly stated the relevant law on this issue and were not " 'capable of confusing and thereby misleading the jury.' " Bennis v. Gable, 823 F.2d at 727 (quoting U.S. v. Fischbach & Moore, Inc., 750 F.2d at 1195).
 
 
 103
 H. EVIDENCE REGARDING WALDORF'S FUTURE EARNINGS AS AN ATTORNEY
 
 
 104
 Because the judgment will be vacated and a new trial will be held, it is not strictly necessary that we reach the damages issues raised by the Borough and Rego. However, if the plaintiff prevails, the two damages issues that were appealed here will likely arise again. In order to avoid a possible repetitive appeal of the same issues, we shall therefore address them here.
 
 
 105
 The Borough and Officer Rego both appealed the district court's admission of evidence regarding Waldorf's future earnings as an attorney. During the trial, Waldorf was allowed to introduce testimony, over their objections, that he would have become an attorney but for his accident and evidence as to what his earnings as an attorney would have been. We review rulings regarding the admissability of evidence for abuse of discretion. In re Japanese Electronic Products, 723 F.2d 238, 260, 265 (3d Cir.1983), rev'd on other grounds, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 
 
 106
 The measure of damages for lost earnings is the "deprivation of a reasonable expectation of a pecuniary advantage" which would have resulted but for the incident that brought about the suit. Curtis v. Finneran, 83 N.J. 563, 569, 417 A.2d 15 (1980). In order to award damages for lost earnings from future employment in a particular field, the plaintiff must provide the factfinder with credible evidence of the "prerequisites for employment" in that field, and evidence that the plaintiff had the ability and possessed the needed qualifications for employment in that field. Rodriquez v. U.S., 823 F.2d 735, 747, 749 (3d Cir.1987).
 
 
 107
 In Rodriquez, the district court allowed a 25% enhancement of damages to represent plaintiff's loss of earnings as a commercial pilot. Rodriquez, at the time of his death, had both a private and a commercial pilot's license and was a certified flight instructor. It was his ambition to become a full-time commercial pilot, and he was trying to build up his flying hours, as he believed that this would help him to get such a position. Based on the evidence, the district court concluded that there was "a good likelihood that he would someday seek and obtain ... employment ... [as a commercial pilot] and that he had the capacity to do so." Id. at 748. This court overturned the damages enhancement, holding that the trial court's conclusion was "without evidential foundation." Id.
 
 
 108
 By the standard of Rodriquez, Waldorf failed to provide the evidentiary foundation, the "prerequisites for employment," for the jury to consider his future earnings as an attorney. He was a 24-year old high school drop-out who had obtained his high school equivalency diploma in the military. He had worked as a paralegal in the military, but had been unable to find employment as a paralegal in civilian life; he had entered and dropped out of the New York Police Academy; he had been refused admission to a four-year degree program and had completed one year of a two-year Associate Degree Program at the College of Staten Island. At the time of the accident, he was taking six courses, three of which were photography, tennis and acting. While there is no reason to doubt Waldorf's aspiration to become a lawyer, no credible evidence had been presented that he had the ability to become a lawyer. At the time of the accident, he did not possess the qualifications, and it is not at all certain that he would have been admitted to law school. As in Rodriquez, the evidence is not there to support the award for loss of future earnings in the career to which the plaintiff aspired.
 
 
 109
 The district court noted several cases in which awards of future earnings were upheld, though professional training had not been completed. In two cases, awards for future earnings were given in the death of young people who had shown truly exceptional promise. In Kopko v. New York Live Poultry Trucking Co., 3 N.J.Misc. 498, 128 A. 870 (Cty.Ct.1925), a damages award based on projected earnings as a violinist was supported by evidence that the decedent, a boy of twelve, had unusual aptitude, ability and promise as a musician; his violin teacher had testified that he would, because of his talent, become a great musician. Similarly, in Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J.Super. 8, 187 A.2d 357 (App.Div.1963), the court upheld a jury award based on projected earnings as a biochemist where the fifteen year old decedent, who was in the top 1% of his class of 600 in a very competitive high school for gifted students, had an I.Q. of 157, excelled in biology and chemistry, and had the ambition of becoming a biochemist. The court also noted Bohrman v. Pennsylvania RR Co., 23 N.J.Super. 399, 93 A.2d 190 (App.Div.1952), cert. denied, 11 N.J. 496, 95 A.2d 35 (1953), a case in which a jury award based on projected earnings as a beautician was upheld where the deceased, an 18-year old girl, had almost finished her training and worked in her father's beauty shop. What is missing in the instant case is the exceptional talent shown by the young decedents in Kopko and Gluckauf or the near completion of training and virtual assurance of employment in the chosen field in Bohrman.
 
 
 110
 In the instant case, the district court found that "it is more probable than not that [Waldorf] would have pursued an education leading toward law school." II JSA 717 (emphasis added). But that is not the same thing as being admitted to law school and completing it. Furthermore, the district court found, incorrectly, that it was the defendant's burden to establish Waldorf's lack of capacity or lack of aptitude for law school. II JSA 717. This is contrary to Rodriquez, which states that, under New Jersey law, the plaintiff must provide the factfinder with
 
 
 111
 some evidentiary and logical basis for calculating, or at least, rationally estimating a compensatory award. "[S]heer conjecture cannot be the basis of a jury finding." Cases applying New Jersey law have upheld a finding of future employment in a particular field when there was evidence to support the likelihood that decedent would achieve that position.
 
 
 112
 Rodriquez, 823 F.2d at 747 (citations omitted).
 
 
 113
 There was no credible evidence as to Waldorf's ability and qualifications as an attorney, and the district court erred in allowing the jury to consider whether to grant him future earnings as an attorney. Such consideration was unduly speculative.
 
 
 114
 I. SUGGESTED DOLLAR AMOUNT FOR PLAINTIFF'S PAIN AND SUFFERING
 
 
 115
 Lt. Rego and the Borough of Kenilworth claim that they are entitled to a new trial because of improper references by plaintiff's counsel in his closing statement to a specific minimum amount to be awarded for pain and suffering.[29] In his closing statement, Waldorf's counsel referred to testimony that if Waldorf had become an attorney, his lifetime earnings would have been approximately $3.8 million. He than went on to say:
 
 
 116
 You heard the testimony. You saw the man.... And if you find that, you find the final figure, his loss of $3,799,000 will make it whole. It doesn't make him whole. You want to know the truth: That's peanuts. That's peanuts for the price that should be paid for what this man went through.
 
 
 117
 . . . . .
 
 
 118
 So you take the $3 million. That's just the beginning. That's peanuts, because the real loss is not monetary, ... what kind of money can pay him back? $3,799,000? That's peanuts. That's a small part of what he should be paid for the kind of injuries that he's received, for the pain and suffering....
 
 II JSA 1769-70 (emphases added).[30]
 
 119
 Does the above scenario represent an argument by plaintiff's counsel for a specific amount of damages for pain and suffering? We think it does. It constitutes a plea for, at a minimum, an award of $3,799,000 for the elements of pain and suffering. As to the intended impact of counsel's proposed mere "peanuts" multiplier factor, it is unclear how high a multiplier he was suggesting. But any jury would have to think that counsel was urging that the $3,799,000 should be doubled, tripled, quadrupled or enhanced even more.
 
 
 120
 This court has been reluctant to decide the issue whether plaintiff's counsel should be permitted in closing arguments to a jury to make reference to specific lump sum damages for pain and suffering, or references to an ad damnum clause. We have referred to it, however, as a "troublesome practice." Gumbs v. Pueblo Intern Inc., 823 F.2d 768, 771 (3rd Cir.1987). See also Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir.1979).
 
 
 121
 The question whether plaintiff's counsel may request a specific dollar amount for pain and suffering in his closing remarks is a matter governed by federal law, and we now hold that he may not make such a request. We note that effective advocacy can occur without employing the overly dramatic approach that plaintiff's counsel used in this case. In the final analysis, a jury trial should be an appeal to the rational instincts of a jury rather than a masked attempt to "import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible to evaluation on any such basis." Botta v. Brunner, 26 N.J. 82, 100, 138 A.2d 713, 723 (1958).
 
 
 122
 We hold that the references by plaintiff's counsel in his closing remarks to a minimum dollar amount that plaintiff should be awarded for his pain and suffering could have irrationally inflated the damages award and, under the facts of this case, constituted reversible error.[31]
 
 III. CONCLUSION
 
 123
 For reasons stated in the foregoing opinion, we will affirm in part the order of the district court, reverse in part, vacate in part and remand for further proceedings consistent with this opinion. To summarize: We will affirm the district court's refusal to grant the Borough's summary judgment motion regarding its failure to provide its police with emergency signalling devices and will affirm its ruling that the verdicts against the Borough and Edward Shuta are not inconsistent as a matter of law. We will reverse the district court's grant of two partial summary judgments in favor of the Borough and remand for trial on the issues of the Borough's liability for the installation of a traffic light with only one signal face in each direction and its liability for the lack of a preventive maintenance program for the traffic light. We will reverse the ruling that the verdict against Lt. Rego was not against the weight of the evidence, vacate the judgment against him and remand for a new trial on his liability. We will affirm the district court's ruling on its inclusion on the verdict form of the note regarding the Borough's vicarious liability for the actions of its police officers and will affirm the court's jury instructions on that issue. We will vacate the judgment of liability against the Borough because of the court's error in jury instructions as to the burden of proof on the question of the palpable unreasonableness of the Borough's failure to provide emergency signalling devices. Because the assignment of specific percentages of liability against the various defendants are all intertwined, the judgments of liability against defendants Shuta and Spence are also vacated. The case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Judgment was entered against the Borough of Kenilworth, Joseph Rego, Edward Shuta and Kenneth Spence. Spence, the owner and driver of the van in which Waldorf was riding, relies upon the issues and arguments raised by the Borough and Rego. Edward Shuta, the driver of the other van, filed a notice of appeal, but did not take further action in this court
 
 
 [2]
 Waldorf also sued other Borough officials and employees and passengers in both cars, but those defendants were dismissed
 
 
 [3]
 The comment to this subsection says that it is
 intended to specify with particularity the type of high-level policy decisions which must remain free from the threat of tort liability consistent with the principles established in the above cases. For example the decision to seek appropriations for the purchase of equipment or the construction of facilities or the hiring of personnel is a discretionary judgment of a coordinate branch of government. The discretionary decision involving whether or not to provide resources or to provide appropriations for personnel or facilities or equipment is another example of high-level decision making reserved to a coordinate branch of government--in this case the legislative branch of the public entity.
 N.J.S.A. Sec. 59:2-3, Comment.
 
 
 [4]
 Section 59:2-3(a) states, "A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity...."
 
 
 [5]
 N.J.S.A. Sec. 59:2-2(a) states, "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."
 
 
 [6]
 Rego appealed the finding of his liability under N.S.J.A. Sec. 59:3-2(d) as being against the weight of the evidence, discussed below, but he did not appeal the jury instructions as to burden of proof
 
 
 [7]
 The district court said of the draft instructions: "I don't expect to see this up in the Circuit ... It's a draft ... I haven't come to a final conclusion, ..." II JSA 1381-2
 
 
 [8]
 In the colloquy, the judge ruled against the defendant and said that he thought that the Borough had the burden of proof on the direct liability issue as well as on the indirect liability issue. In the draft charge, that was also his position. Waldorf asserts that, since the Borough's counsel failed to object to the court's jury instructions when they were given, he waived any objection. The Borough's counsel did, however, object in an earlier colloquy. II JSA 1561-62. This court has ruled that where counsel has articulated his objections to a particular aspect of the proposed charge and has received a definitive ruling on that issue, counsel should be deemed to have preserved his objection for appeal, even though he did not object when the charge went to the jury. Bowley v. Stotler, 751 F.2d 641 (3d Cir.1985)
 
 
 [9]
 More than twenty years ago, the author of this opinion was reversed by the Court of Appeals for failing to give the proper instructions on the burden of proof to a jury. Ostrov, 379 F.2d 829, 837-38. In that case, the jury had been instructed that the defendant "has the burden of proof by a preponderance of the evidence." Id. at 837. The Court of Appeals ruled that the "defendant's burden was to prove fraud by a preponderance of clear and satisfactory evidence" and therefore a new trial was ordered. Id. When the case was retried, giving the instructions announced by the court of appeals, the jury verdict was the same. See Ostrov v. Metropolitan Life Insurance Co., 439 F.2d 1199 (3d Cir.1971)
 
 
 [10]
 We recognize that among practitioners there is a dispute as to whether subtle distinctions in jury instructions make a difference in the result; we operate on the assumption that these distinctions are weighed by conscientious jurors. However, more than forty years ago, Judge Jerome Frank stressed that courts may overemphasize the impact of instructions to the jury. J. Frank, Courts on Trial 54 (1949)
 
 
 [11]
 Relevant portions of N.S.J.A. Sec. 59:4-2 are quoted in the discussion of Borough immunity regarding failure to provide emergency warning devices, above
 
 
 [12]
 The verdict form did not ask the jury, if it found Shuta negligent in his driving, to specify in what respect he was negligent. I JSA 7
 
 
 [13]
 If the Borough's position were accepted, then New Jersey's Comparative Negligence Act (N.J.Stat.Ann. Secs. 2A:15-5.1 to 5.3 (West 1987)) could never be applied in conjunction with the section in question. If another party were even 1% liable, the public entity could not be held liable at all. In the absence of explicit authority to the contrary, we cannot believe that the New Jersey legislature intended such a result
 
 
 [14]
 Section 59:2-3 is entitled "Discretionary activities" and it reads in pertinent part: "A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature; ...."
 Section 59:3-2 is also entitled "Discretionary activities" and it provides the same immunity for public employees acting in their official capacities.
 
 
 [15]
 Waldorf argued in his brief that the Borough's actions regarding the installation of the traffic light failed to qualify for plan or design immunity under section 59:4-6 of the Act. He cited Thompson v. Newark Housing Authority, 108 N.J. 525, 531 A.2d 734 (1987), Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 449 A.2d 472 (1982) and several other cases in support of this proposition. However, because the district court based its grant of summary judgment not on that section, but on sections 59:2-3 and 59:3-2, his arguments about section 59:4-6 are not relevant here
 
 
 [16]
 Some exercises of discretion, such as the decision to assign policemen to one rather than another urgent situation or to plow one street before another following a snow storm, require no special demonstration; the exercise of discretion is implicit in the action. Amelchenko v. Borough of Freehold, 42 N.J. 541, 201 A.2d 726 (1964). Other exercises of discretion do require demonstration; if police are not provided with emergency warning devices or if smoke alarms are not included in a building plan, it is not evident that these alternatives were considered at all. Thompson v. Newark Housing Authority, 108 N.J. 525, 531 A.2d 734 (1987)
 
 
 [17]
 Because no evidence was presented that the Borough exercised its discretion in deciding to install a traffic signal with only one light face in each direction, we do not reach the question of whether a discretionary decision to install a traffic light whose design was in violation of state law could qualify for immunity under the New Jersey Tort Claims Act. It may be that, absent special circumstances, such illegal action qualifies as patently unreasonable
 
 
 [18]
 The Manual states that an essential feature for an adequate maintenance program includes routine signal lamp replacement short of their anticipated life. Manual, 3B-28, Appellant's Brief, App. at 73-76
 
 
 [19]
 Open to the court on remand are at least two other arguments raised by Waldorf that may defeat the Borough's claim for immunity under Sec. 59:2-3(c). First, the court may consider whether the Borough in fact had discretion to maintain the light in the manner it did, since its procedures clearly deviated from the standards for the maintenance of traffic signals set forth in the Manual. Second, it is not clear whether the Borough may claim entitlement to immunity under Sec. 59:2-3(c), as opposed to Sec. 59:2-3(d), since there is record evidence which would support a conclusion that the Borough had adequate resources to comply with the Manual's admonition that lights be replaced short of their life expectancy, and was on notice as to the hazards posed by the Monroe Ave. stop light prior to the night of Waldorf's accident. See Brown v. Brown, 86 N.J. 565, 576, 432 A.2d 493, 499 (1981) (no immunity under Sec. 59:2-3(c) available to the state of New Jersey where "[t]here was adequate and undenied proof that the state had available at all times the necessary equipment and qualified personnel to rectify the dangerous condition.")
 
 
 [20]
 In addition, Rego contends that because there was insufficient evidence upon which the jury could have found him liable, the trial court should have granted him a judgment notwithstanding the verdict. He did not, however, make a motion for a directed verdict at trial and therefore could not move for a J.N.O.V. after the verdict was returned. Consequently, we cannot consider it here; we can consider only the district court's denial of Rego's motion for a new trial or a remittitur
 
 
 [21]
 Waldorf made no claim that Rego's actions in assigning police personnel were ministerial rather than discretionary. Both sides implicitly agreed that his actions were subject to immunity under Sec. 59:2-3(d) if they were not palpably unreasonable
 
 
 [22]
 The verdict form asked a 2-part question, but the jury was to give only one response, "yes" or "no." They marked "yes."
 
 
 [23]
 There was another police officer in another part of the police station at the time of the accident, but he was not under Lt. Rego's command
 
 
 [24]
 Such a bizarre occurrence in a fight between unarmed opponents is not unknown. In a recent New Jersey case before this court, one prison inmate attacked another over some food that had been brought to their cell and rendered him quadriplegic. Ryan v. Burlington County, 889 F.2d 1286 (3d Cir.1989)
 
 
 [25]
 Counsel for Lt. Rego did briefly raise a question about the note on the verdict form, but he appeared to be satisfied with the court's explanation and did not maintain his objection, as did counsel for the Borough. II JSA 1819-24
 
 
 [26]
 Bailey was a products liability case in which the appeal alleged that the district court's instructions to the jury did not adequately delineate circumstances under which the risk of loss from unintentionally detonating dynamite should be placed on the supplier, as a matter of law. 602 F.2d at 587. The co-plaintiff had objected in general terms, and this court held that the objection was thus raised for the appellant-plaintiff, whose counsel had not objected at trial. In the instant case, it was a co-defendant rather than a co-plaintiff who raised the objections, but the policy consideration of allowing the district court to rule on the objection at trial was similarly met. Id
 
 
 [27]
 The New Jersey Tort Claims Act, N.J.Stat.Ann. Sec. 59:2-2(a) states that a public entity "is liable for injury proximately caused by act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."
 
 
 [28]
 The first paragraph quoted appears in the transcript of the jury charge, but not in the written version. The second paragraph appears in both
 
 
 [29]
 The Borough had moved for a new trial, which the trial court refused. Lt. Rego had moved for remittitur, which the trial court also refused. Rego now claims that errors and prejudicial remarks during the trial entitle him to either a substantial remittitur or a new trial
 
 
 [30]
 Waldorf argues that if these comments were in error, the district court's remarks to the jury effectively counteracted any adverse effects they might have had. We do not agree
 
 
 [31]
 While we hold that it is reversible error in this case, we recognize that each record must be examined to determine whether such an error may have sufficiently influenced the jury to constitute reversible error