**Sylvia OSTROV, Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY.**

**No. 16318.**

United States Court of Appeals
Third Circuit.

Argued March 23, 1967.
Decided June 27, 1967.

Herman P. Abramson, Philadelphia, Pa., for appellant.

Arthur W. Leibold, Jr., Philadelphia, Pa., (Owen B. Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and KALODNER and SMITH, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

In the instant diversity action,[1] the plaintiff Sylvia Ostrov sought to recover from the defendant Metropolitan Life Insurance Company on a $50,000 life insurance policy issued to her on the life of her deceased husband, Nathan, the defendant having denied payment because of Nathan's alleged material misrepresentations as to his health. Following trial, the jury returned a verdict in favor of the defendant, and, pursuant thereto, judgment was entered in favor of the defendant on the policy claim, and for the plaintiff for $3,582.26 representing premiums paid. The District Court denied plaintiff's motions for judgment n.o.v. and for a new trial, and this appeal followed.[2]

Plaintiff urges here that she is entitled to judgment n.o.v.; further, that she is entitled to the minimum relief of a new trial by reason of erroneous instruction to the jury as to the defendant's burden of proof with respect to its defense of material misrepresentations, and by reason of various alleged errors in the conduct of the trial.

In reply, defendant contends that the plaintiff's claim that she is entitled to judgment as a matter of law is without basis, and that the same holds true with respect to her asserted right to a new trial.

Discussion of the issues presented must be prefaced by this statement of the critical facts adduced below.

On August 11 and 18, 1959, Nathan executed an application for a $50,000 life insurance policy on a form supplied by defendant. This application consisted of two parts: "Part A" and "Part B". Part A, executed on August 11, 1959, asked for various information, including the applicant's name, residence, age, occupation and proposed beneficiary and stated that: "It is agreed that: 1. The statements and answers in Part A and Part B of the application for this insurance shall form the basis of the contract of insurance, if one be issued." Part B of the application, executed on August 18, 1959, captioned "Applicant's Statements to the Medical Examiner", contains the alleged fraudulent misrepresentations as to Nathan's health upon which defendant relies. Defendant prepared a policy pursuant to this application, but it never became effective and is not the policy in suit.

On August 31, 1959, Sylvia executed defendant's form captioned "Owner Form of Application", pursuant to which the policy in suit was issued. This form, which named Sylvia Ostrov as the "Owner" and Nathan Ostrov as the "Life Proposed", contained the following statement, which appeared above Sylvia Ostrov's signature:

*"It is understood and agreed that all the statements and answers subscribed to by the Life Proposed in the basic ap-*

---

1. Plaintiff is a citizen of Pennsylvania; defendant is a New York corporation with its principal place of business in New York.

2. The District Court's opinion is reported at 260 F.Supp. 152 (E.D.Pa.1966).

plication for insurance which was signed by the Life Proposed on the _____ day of _____ 19___ including the statements and answers referred to in Item 1 of the agreement therein and the statement below when and as completed and signed by the Life Proposed, *shall, together with this application, form the basis of the contract of insurance herein applied for,* if one be issued, without affecting the use of the said basic application as the application for any other policy." (Emphasis supplied.)

On the same day, Nathan signed a statement at the bottom of this form which read:

"I hereby consent to the insurance applied for on my life and I hereby ratify and confirm the statements and answers in the basic application for insurance, signed by me and referred to above, as being true and complete as though made on the date herein except as otherwise stated below."

"I have reviewed the said basic application and state that there are: [no exceptions]."

On August 31, 1959, Sylvia Ostrov also executed defendant's form captioned "Request for Check-O-Matic Premium Arrangement", which authorized defendant to draw checks against a designated bank account for payment of premiums.

On September 15, 1959, the policy in suit was delivered to plaintiff and became effective. At that time both Sylvia and Nathan signed a form captioned "Application Amendment", which is reproduced in part below.

APPLICATION   AMENDMENT

Policy No.
24 176 691a    Nathan B Ostrov    8 31 59

Application Dated

(Including Basic Application as referred to therein)

To the Metropolitan Life Insurance Company:

The undersigned hereby amends the application for Life Insurance made to your Company on the date stated above

By stating the date on which the basic application was signed by the Life Proposed as August 11, 1959.

These amendments and declarations are to be considered as a part of the said application and subject to the agreements, covenants, and statements therein contained. The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. The said application, as amended, is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof.

Among the documents attached to the policy at the time of its delivery were copies of the "Application Amendment", the "Owner Form of Application", Parts A and B of the application signed by Nathan on August 11 and 18, 1959, and a "Rider Regarding the Payment of Premiums Under the Check-O-Matic Premium Arrangement". However, the form captioned "Request for Check-O-Matic Premium Arrangement" was not attached to the policy at this time.

The policy itself stated, inter alia, that:

"Metropolitan Life Insurance Company hereby insures the life of Nathan B. Ostrov herein called the Insured, in accordance with the terms of this Policy, No. 24176691A, and promises to pay at its Home Office in the City of New York, upon receipt of due proof of the death of the Insured and upon surrender of this Policy, fifty thousand dollars to the Owner designated in the Ownership provision attached."

The attached "Ownership Provision" named Sylvia as "the Owner of this Policy."

The policy also contained this pertinent provision:

"This Policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties, and all statements made by the Insured shall be deemed representations and not warranties, and no statement shall

avoid this Policy or be used in defense of a claim hereunder unless it is contained in the application therefor and a copy of such application is attached to this Policy when issued."

The premiums were paid on this policy up until Nathan's death on June 27, 1961, after which plaintiff demanded from defendant the face amount of the policy. Defendant refused such demand on the ground that Nathan had made fraudulent misrepresentations concerning his health in the application document he executed on August 11 and 18, 1959, and tendered to plaintiff the premiums paid.

Plaintiff then commenced the present action in the District Court to recover the face amount of the policy. In its answer, defendant set forth as a defense its claim of fraud, stating that: " \* \* \* the insured, Nathan B. Ostrov, and through him also plaintiff, knowingly made false and fraudulent misrepresentations as to the state of his health, prior medical treatment, prior hospitalization and prior symptoms in order to induce defendant to issue the policy in suit, and in reliance on such representations defendant issued said policy."

After denial, by District Judge Kraft, of plaintiff's motion for judgment on the pleadings,[3] a jury trial was held before District Judge Higginbotham.

The jury returned a verdict in favor of the defendant on the basis of affirmative answers to two interrogatories.

The special interrogatories read as follows:

"I. As to any material question in the applications pertaining to his present health condition and to any prior laboratory, hospital and medical treatment and consultation, did Nathan Ostrov know at the time he answered such questions that any of his answers were false?

"II. Is the copy of the applications signed by Nathan B. Ostrov on August 11 and August 18, 1959, which the Metropolitan Life Insurance Company attached to the policy a legible copy of the original applications?"

It must be noted in further preface to our discussion that it is undisputed that Pennsylvania law controls.

### JUDGMENT N.O.V.

In support of her claim that the trial court erred in denying her motion for judgment n. o. v., plaintiff contends that she was entitled to judgment as a matter of law for these reasons: (1) under § 318 of the Pennsylvania Insurance Company Law, 40 P.S. § 441, the application signed only by Nathan on August 11 and 18, 1959, upon which the defense of fraud is based, is not part of the policy in suit nor is it admissible in evidence, because it was neither signed by her, nor was it attached to the application for the present policy when she signed that application on August 31, 1959; (2) since the form captioned "Request for Check-O-Matic Premium Arrangement" was not attached to the policy, that circumstance rendered it and all other applications, including the one signed by Nathan, on August 11 and 18, 1959, inadmissible as part of the insurance contract under the provisions of § 318; and (3) "the plaintiff is entitled to judgment where the policy states that all statements shall be representations and not warranties, and the defendant adduced no evidence that the plaintiff personally made any fraudulent statements."

Defendant, in reply, urges that: (1) Section 318 does not require that plaintiff's signature be affixed to the application signed by Nathan on August 11 and 18, 1959, nor does it require that the latter document be before plaintiff when she signed the application for the present policy; (2) the Check-O-Matic Request was not an application document within the meaning of § 318, and was therefore not required to be attached to the policy at the time of its delivery; and (3) plain-

---

3. Ostrov v. Metropolitan Life Insurance Company, Civil Action No. 31520, United States District Court for the Eastern District of Pennsylvania, May 20, 1965. Reargument denied, June 15, 1965.

**834**

tiff was bound by her husband's material misrepresentations.

We are of the opinion that plaintiff was not entitled to judgment as a matter of law.

Section 318 of the Pennsylvania Insurance Company Law of May 17, 1921, P.L. 682, 40 P.S. § 441, provides in pertinent part:

"All insurance policies, issued by * * insurance companies * * * in which the application of the insured * * * form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application *as signed by the applicant* * *; and, unless so attached and accompanying the policy, no such application * * * shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application * * * be considered a part of the policy or contract between such parties" (Emphasis supplied.)

In Syme v. Bankers National Life Insurance Company, 393 Pa. 600, 606–607, 144 A.2d 845 (1958), the Supreme Court of Pennsylvania stated with respect to the legislative purpose of § 318:

"[Section 318] was enacted in order to establish uniform rules for determining whether particular promises or statements of an insurance agent are included within the contract between the insurer and the insured: Frost v. Metropolitan Life Insurance Company, 337 Pa. 537, 541, 12 A.2d 309. In speaking of the purpose of the Act of May 11, 1881, P.L. 20, whereof The Insurance Company Law of 1921 is a substantial reenactment, Chief Justice Mitchell in Lenox v. Greenwich Insurance Co. of New York, 165 Pa. 575, 577, 30 A. 940, 941, there expressed what is still regarded as the aim of the legislation, viz., 'It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. *The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.*' This has since been quoted with approval. See, e. g., Muhlenberg v. Mutual Fire Insurance Company of Sinking Springs, 211 Pa. 432, 433–434, 60 A. 995. As the statute was passed in the interest of fair dealing, its provisions must be strictly complied with in all respects: Ellis v. Metropolitan Life Insurance Company, 228 Pa. 230, 231, 77 A. 460." (Emphasis supplied.)

Section 318 affords no basis for the plaintiff's first contention that Nathan's application of August 11 and 18, 1959, upon which the defense of fraudulent misrepresentation is premised, is not part of her policy and therefore inadmissible as evidence, for the twofold reason that she didn't sign it, and it was not attached to her application for the policy in suit when she signed that application.

Assuming *arguendo*, that plaintiff was not only the applicant for the policy in suit but also an "insured" under it,[4] as these terms are used in § 318, that section only requires that any and all applications "as signed by the applicant" be attached to the policy itself.

The dual circumstances that plaintiff had not signed Nathan's August application prior to or at the time she signed her own application, and that the August application was not before her when she signed her application, are not with-

4. Defendant contends that Nathan, and not plaintiff was the "insured", not only by the terms of the policy, but also under § 318 and that he was also the "co-applicant" for the policy as that term is used in § 318.

in the periphery of § 318. Nor is the fact that plaintiff never at any time signed Nathan's August application of any consequence.

■ We are of the view that the District Court correctly concluded that neither the public policy embodied in § 318, nor the Pennsylvania cases which have interpreted that section, preclude the incorporation by reference in a signed application of another *existing* document when both the signed application and the existing document incorporated therein by reference are attached to the insurance policy.[5] In the present case, the "Owner Form of Application" and the "Application Amendment", which were both signed by plaintiff, made the application signed by plaintiff's husband on August 11 and 18, 1959 "the basis of the contract" for the policy in suit, and since at the times plaintiff signed these first two documents, the latter document was in existence, that document was effectively incorporated in and made a part of the application for the policy in suit. Inasmuch as all of these documents were attached to the policy when it was delivered to plaintiff, the "signature requirement" of § 318 was met.

The foregoing also disposes of plaintiff's argument that § 318 required that the application signed by Nathan on August 11 and 18, 1959, be attached to her application when she signed it on August 31, 1959.[6] As we have noted, § 318 only requires that copies of the application documents be attached to the *policy;* it does not require that prior application documents be attached to subsequent application documents when they are signed. But even if such a requirement could somehow be read into the statute, it would not help plaintiff's case, because when she signed the "Application Amendment" on September 15, 1959, the application signed by her husband on August 11 and 18, 1959 was attached to the policy, thereby giving her full opportunity to examine the latter application, if she had chosen to do so.

The above conclusion does not in any way contravene the principle that the parties to an insurance contract cannot waive a statutory provision enacted for the benefit of the insured. What was done here was in complete accord with § 318 and there was no attempt whatsoever to waive any of the requirements of that section.

■ Plaintiff's second contention in support of her claim for judgment n. o. v. is that the "Request for Check-O-Matic Premium Arrangement" was an application document within the meaning of § 318, and that since it was not attached to the policy at the time of its delivery, all other application documents, including the one upon which the defense of fraud is based, are inadmissible.[7] To

5. Fidelity and Casualty Company of New York v. Howe, 38 F.2d 741 (3 Cir. 1930), cert. denied 281 U.S. 765, 50 S.Ct. 464, 74 L.Ed. 1173 (1930); Ross v. Metropolitan Life Insurance Company, 403 Pa. 135, 169 A.2d 74 (1961) and Syme v. Bankers National Life Insurance Company, 393 Pa. 600, 144 A.2d 845 (1958), which are all cited by plaintiff in support of her contention that § 318 required that her signature be affixed to the application signed only by her husband on August 11 and 18, lend no nourishment to plaintiff's position. Those decisions do not stand for the proposition, implicit in plaintiff's argument, that § 318 requires that an insurance applicant sign each and every individual piece of paper which is part of an application for an insurance policy nor is there any language in the Courts' opinions in those cases which precludes the application of the doctrine of incorporation by reference in the circumstances of the present case.

6. Plaintiff refers us to certain language in Tables v. Metropolitan Life Insurance Company, 202 F.Supp. 547 (W.D.Pa. 1962), which she claims supports this argument; however, such language is not only unclear, but is also *obiter dictum.*

7. Defendant contends that since plaintiff did not raise the Check-O-Matic issue in her motion for a directed verdict under Rule 50, Fed.R.Civ.Proc., it does not provide a proper basis for seeking judgment n. o. v. In reply, plaintiff contends that she did not waive the point, because she raised the issued in her motion for judgment on the pleadings before Judge Kraft and his decision passing on the

support this contention, plaintiff relies on decisions such as Sandberg v. Metropolitan Life Insurance Company, 342 Pa. 326, 20 A.2d 230 (1941), which holds that an entire application must be attached to an insurance policy if the insurer seeks to rely upon any part of such application to establish a defense. Our examination of the "Request for Check-O-Matic, etc." convinces us that it is not an "application" or part of an "application" as contemplated by § 318.

As pointed out by the District Court, plaintiff did not by the terms of this document apply for or request an insurance contract. Plaintiff merely "requested and authorized" defendant "to draw a check each month" on a designated bank account "for the purpose of paying premiums". This arrangement only provided a convenient *method* of paying premiums; it had nothing whatsoever to do with the cost of the policy or with the terms or benefits of the policy, and, therefore, did not "form part of the policy or contract between the parties thereto, or have any bearing on said contract". Cf., Ridsdale v. Kentucky Home Mut. Life Ins. Co., 284 Ky. 229, 144 S.W. 2d 487, 131 A.L.R. 740 (1940).

Moreover, what was done here, was in full accord with § 318's purpose of keeping before the policy owner all the terms of his contract with the company, Syme v. Bankers National Life Insurance Co., supra, for when the present policy was delivered to plaintiff, a "Rider Regarding the Payment of Premiums Under The Check-O-Matic Premium Arrangement", which contained the essential terms of the arrangement, was physically attached to and make a part of the policy, thereby putting before plaintiff the essential terms of the agreement. Cf., Good v. Metropolitan Life Insurance Company, 166 Pa.Super. 334, 337–340, 71 A.2d 805 (1950).

The crux of plaintiff's third contention is that assuming *arguendo* that her application incorporated by reference the mooted health representations in Nathan's August application, the representations were not "warranted" by her,[8] and in the absence of proof of intention on her part to deceive, she is entitled to judgment as a matter of law.

Otherwise stated, the essence of this contention is that assuming that Nathan made fraudulent representations and that they were incorporated in plaintiff's application, that she is not bound in the absence of proof that she was aware of the falsity of Nathan's statements and had acted in bad faith with respect to them.

█ We do not subscribe to plaintiff's view. We are of the opinion that the trial judge correctly held that plaintiff was bound by Nathan's fraud, if proven, even though she was not aware of it.

The "Owner Form of Application" executed by plaintiff, specifically provided that "all the statements and answers subscribed to by the Life Proposed [Nathan] in the basic application for insurance which was signed by the Life Proposed on the _____ day of _____ 19__ [August 11, 1959] * * * shall, together with this application, form the basis of the contract of insurance herein applied for * * *".

Plaintiff's "Application Amendment", which in terms specified August 11, 1959 as the date of Nathan's application, above referred to, further provided "The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. The said application, as

---

question is now on appeal before this Court. Plaintiff also contends that the point was the subject of extensive briefs submitted by the parties to the trial judge and that the question was also fully argued before the trial judge on plaintiff's motion for judgment n. o. v. Since we reject plaintiff's contention with respect to the Check-O-Matic issue on its merits, we will not consider whether she waived the point.

8. On this score plaintiff points to the fact that the policy provides in specific terms that all statements "shall be deemed representations and not warranties".

amended, is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof."

As a consequence of these provisions Nathan's representations as to his health became a critical part of the basis of the contract of insurance, and plaintiff ratified and confirmed Nathan's representations.

■ It is settled law in Pennsylvania that a policy is void where it is issued to an insured on the basis of "fraudulent representations" made with knowledge of falsity or in bad faith. Travellers Insurance Co. v. Heppenstall, 360 Pa. 433, 61 A.2d 809 (1948).

■ While the Pennsylvania courts have not decided the precise issue as to whether fraudulent representations, made by the "Life Proposed", in an application for an "Owner's" policy, are binding on the "Owner" who has *ratified and confirmed* the fraudulent representations, we are in complete accord with the trial judge's view that it "would give *carte blanche* latitude to the unscrupulous" [9] to hold that the owner of a policy is insulated from the fraud of the Life Proposed, and that the Pennsylvania courts would so decide in accordance with the settled rule in other states.

What was said in Equitable Life Assurance Society of United States v. New Horizons, Inc., 28 N.J. 307, 146 A.2d 466 (1958), where the corporate owner of a "key man" insurance policy was held to be bound by the fraudulent representations of its employee whose life was insured, is significantly pertinent here.

There the Court said, page 471 of 146 A.2d:

"To hold * * * that the defense of material and fraudulent misrepresentation cannot prevail against the owner and beneficiary of the policy of 'key man' insurance in question, would make such policies virtually incontestable. This is contrary to the intent and terms of the instant contract and ig-nores Linden Tool's 'adoption' or 'ratification' of the misrepresentations made by Yafchack".

To the same effect see Gradach v. New York Life Insurance Co., 260 Wis. 451, 458–459, 51 N.W.2d 13, 17 (1952).

The trial judge did not err in the instant case in denying plaintiff's motion for judgment n. o. v.

■ It was for the jury to determine the issue as to whether Nathan had made fraudulent statements in his August application, which was incorporated in plaintiff's application for her "Owner's" policy. DeBellis v. United Benefit Life Ins. Co., 372 Pa. 207, 210–212, 93 A.2d 429 (1953).

### MOTION FOR A NEW TRIAL

Of the numerous grounds advanced by plaintiff in support of her contention that she is entitled to a new trial, we need only consider her objection to that portion of the trial court's charge dealing with the burden of proof. The trial judge instructed the jury that:

"As to this issue of what I will call false statements on material matters the defendant has the burden of proof by *a preponderance of the evidence.*

\* \* \* \* \* \*

"In order to avoid the policy sued upon the burden is upon the defendant by *a fair preponderance of the evidence* to establish that the statements made by Nathan Ostrov, by the husband, in the application were falsely and fraudulently made." (Emphasis supplied.)

Plaintiff contends that the trial court erred in charging the jury that defendant's burden of proof on the issue of fraud was merely by a preponderance of the evidence and that the Court should have instructed the jury that defendant's burden was to prove fraud by a preponderance of *clear and satisfactory evidence.* Defendant, on the other hand, contends that the trial court's instruction was correct and that its burden was to

prove fraud only by a preponderance of the evidence.[10]

Recently, in Ratay v. Lincoln National Life Insurance Company, 378 F.2d 209, 212 (3 Cir. 1967), we said with respect to the standard of proof where fraud is raised as a defense in an action on an insurance policy:

" * * * It is firmly established that under the law of Pennsylvania a party who alleges fraud, as either a defense or the basis of a claim, must prove the facts on which his allegation rests by evidence that is 'clear, precise and indubitable.' Gerfin v. Colonial Smelting & Refining Co., 374 Pa. 66, 97 A.2d 71, 72 (1953); Highmont Music Corp. v. J. M. Hoffman Co., 397 Pa. 345, 155 A.2d 363, 366 (1959). The evidence must be so cogent 'as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts' alleged. Gerfin v. Colonial Smelting & Refining Co., supra, [97 A.2d] 74. The standard of proof is equally as exacting where, as here, fraud is raised as a defense to an action on a policy of insurance. New York Life Ins. Co. v. Brandwene, 316 Pa. 218, 172 A. 669, 670 (1934); Campdon v. Continental Assur. Co., 305 Pa. 253, 157 A. 464, 466 (1931); Suravitz v. Prudential Ins. Co. of America, 261 Pa. 390, 104 A. 754, 756 (1918); Equitable Life Assur., etc. v. Dunn, 61 F.2d 450, 452 (3rd Cir. 1932)."

■ In light of the above, the trial court's instruction that fraud need only be proved "by a fair preponderance of the evidence" was prejudicially erroneous and requires that plaintiff be granted a new trial.

This disposition makes it unnecessary for us to consider the other grounds advanced by plaintiff in support of her claim for a new trial.

For the reasons stated, the judgment entered in favor of the defendant and against the plaintiff pursuant to the jury's verdict, and the "Order and Judgment" of the District Court, will be vacated and the cause remanded with directions to grant a new trial in accordance with this opinion.

---

10. Defendant also contends that plaintiff did not object to the trial court's charge on this point and that the alleged error on the burden of proof was not stated in plaintiff's motion for a new trial. Plaintiff maintains, however, that she did raise the matter in her 20th point for charge, which the trial court denied granting plaintiff an exception, and that in her motion for a new trial, she stated that the trial court erred in refusing her 20th point for charge. While it is arguable whether plaintiff properly raised the issue in the court below, we believe that "the error in the instruction was so fundamental and highly prejudicial as to justify our review of it despite the absence of a proper objection." Ratay v. Lincoln National Life Insurance Company, 378 F.2d 209, 212 (3 Cir. 1967).