**Dona W. HOROWITZ, et al., Plaintiffs,**

v.

**FEDERAL KEMPER LIFE ASSURANCE CO., Defendant.**

Civ. A. No. 93–192.

United States District Court, E.D. Pennsylvania.

Aug. 30, 1994.

ted fraud by failing to disclose in an amendment to his application that he was dying of cancer. Plaintiff Dona Horowitz, Dr. Horowitz's wife and the named beneficiary under the policy, denies that fraud was committed and contends that, in any event, Federal Kemper is precluded as a matter of law from relying upon the alleged fraudulent amendment by its failure to comply with the Pennsylvania insurance statute that requires that the amendment be physically attached to the policy.

Plaintiff seeks a million dollars in proceeds under the policy, attorneys' fees, and treble damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL") as well as punitive damages, costs, and attorneys' fees for alleged bad faith on the part of Federal Kemper in denying payment under the policy.

Before the Court are cross-motions for summary judgment. The Court finds that there is no genuine issue of material fact that Frederick Raffetto, who acted as Federal Kemper's agent in the transaction with Dr. Horowitz, failed to attach the amendment signed by Dr. Horowitz to the policy. Based on this uncontroverted fact, the Court concludes that Federal Kemper is barred as a matter of law from interposing as a defense to the claim any fraudulent misrepresentations contained in the application, amendment, or policy. The Court also finds that plaintiff is not entitled to recover on her bad faith claim because the evidence of Dr. Horowitz's fraud provided Federal Kemper with a reasonable basis for contesting the claim. Finally, the Court finds that plaintiff has no claim under the UTPCPL because that statute does not provide a cause of action for an insurance company's refusal to pay an insurance claim.

James E. Beasley and Barbara R. Axelrod, Beasley, Casey, Colleran, Erbstein, Thistle & Kline, Philadelphia, PA, for plaintiffs.

Dean F. Murtagh and John P. Shusted, German, Gallagher & Murtagh, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This case stems from the decision of defendant Federal Kemper Life Assurance Company ("Federal Kemper") not to pay the proceeds of a million dollar life insurance policy, taken out by Dr. Leonard N. Horowitz a few months before his death. Federal Kemper contends that Dr. Horowitz commit-

## I. BACKGROUND

On September 26, 1991, at the suggestion of Frederick Raffetto, an independent insurance agent, plaintiff's deceased husband, Dr. Leonard N. Horowitz, applied to defendant for a $1,000,000 life insurance policy that named the plaintiff as the beneficiary. On that same day, Mr. Raffetto helped Dr. and

Mrs. Horowitz to complete the application. Both Dr. and Mrs. Horowitz signed Part B of the application which stated: "I (we) promise to tell the Company of any change in the health or habits of the Proposed Insured that occurs after completing this application, but before the policy is delivered to me (us) and the first premium is paid." Mr. Raffetto took the application with him when he left the Horowitz's home.

On October 3, 1991, Federal Kemper arranged to have Carol Coady, a registered nurse, examine Dr. Horowitz. During the examination Ms. Coady checked Dr. Horowitz's vital signs, took a urine sample, performed a blood vena puncture and centrifuged his blood for further testing by a commercial laboratory. As part of the examination, Dr. Horowitz completed Part F of the application which was a questionnaire asking for information regarding his health and past medical history. In completing this questionnaire, Dr. Horowitz failed to disclose that he had seen a gastroenterologist, Anthony DiMarino, M.D., on a few occasions beginning in 1986–87, and that Dr. DiMarino had performed some medical tests on Dr. Horowitz relating to his intestines and colon.

Although the adenocarcinoma that would eventually prove fatal to Dr. Horowitz was present on October 3, 1991, Dr. and Mrs. Horowitz were unaware of it and the examination performed by Ms. Coady failed to detect it. Sometime around Thanksgiving 1991, Dr. Horowitz began to have difficulty swallowing and felt like he had heartburn. On December 4, 1991, he underwent a CT scan and an endoscopy with biopsy. The next day, December 5, he was diagnosed as having terminal adenocarcinoma.

The day after he received the diagnosis, December 6, 1991, Dr. and Mrs. Horowitz went to Hahnemann University Hospital to see the physician in charge of the cancer department. They were told that the cancer had metastasized to Dr. Horowitz's liver and that he had from 5½ to 6 months to live. During the next week, Dr. Horowitz consulted Dr. Kevin Fox, Dr. Dougherty from the Sloan–Kettering Cancer Institute, and Dr. McDonald from Temple University Hospital

to obtain second, third, and fourth opinions on the diagnosis. All three doctors confirmed the original diagnosis.

On December 16, 1991, Dr. Horowitz had a surgical procedure to insert a permanent catheter for purposes of administering chemotherapy and his chemotherapy treatments began. On the morning of December 20, 1991, Dr. and Mrs. Horowitz met with Dr. McDonald at Temple University Hospital and the diagnosis was reconfirmed. Later that day, Mr. Raffetto visited Dr. Horowitz's office to deliver the Federal Kemper policy.[1] At this time, both Dr. and Mrs. Horowitz signed an amendment of application which provided in pertinent part as follows:

> The above noted application of Federal Kemper Life Assurance Company dated September 26, 1991 is amended as follows:
>
> THE REPRESENTATIONS MADE IN THE APPLICATION ARE STILL VALID AS OF THE DATE IN THIS AMENDMENT, AND THE PROPOSED INSURED HAS NOT HAD ANY ILLNESS OR INJURY, AND HAS NOT CONSULTED, 'OR RECEIVED MEDICAL ADVICE OR TREATMENT FROM, ANY PHYSICIAN OR OTHER MEDICAL PRACTITIONER SINCE THE DATE OF APPLICATION EXCEPT AS FOLLOWS:
>
> It is agreed that this amendment is part of the application and of the policy issued, and it will be binding on any person who will have any interest under the policy. This amendment, and the policy, will not take effect until signed as required below. It is agreed that no coverage is in effect if any changes are made to the above statements on this form.

Def.'s Summ. J. Mot., Ex. I (emphasis in original).

Federal Kemper and Mrs. Horowitz disagree about how Mr. Raffetto delivered the policy and amendment to her husband and her on December 20, 1991. According to Mrs. Horowitz, Mr. Raffetto handed the amendment to her husband as a separate piece of paper which he then took with him

---

1. Federal Kemper ·issued Dr. Horowitz's policy on December 3, 1991.

after Dr. Horowitz had signed it. Federal Kemper contends, however, that Mr. Raffetto unstapled the amendment from the policy in the presence of Dr. and Mrs. Horowitz and then placed a copy of it inside the sleeve of a pocket binder that also contained the policy and gave the entire binder to Dr. Horowitz. Before Mr. Raffetto left Dr. Horowitz's office that day, Dr. Horowitz gave him a check for the first premium on the policy.

The evidence is uncontradicted that, although Dr. and Mrs. Horowitz had read, understood and signed the amendment, they did not inform Mr. Raffetto on December 20 of Dr. Horowitz's terminal diagnosis or of his consultations with Drs. Dougherty, McDonald, and Fox. Def.'s Summ. J. Mot., Ex. F at 77–80, 84–87, 98. The evidence is also uncontradicted that Mrs. Horowitz understood that she was bound by Part B of the September 26 application to inform Federal Kemper of her husband's terminal diagnosis. *Id.* at 100–102.

Dr. Horowitz died on May 21, 1992. In a letter dated September 25, 1992, to Frederick Hanselman, a lawyer for Dr. Horowitz's estate, Federal Kemper refused to pay the proceeds of the policy on the basis of Dr. Horowitz's misrepresentations. Mrs. Horowitz filed this lawsuit on December 16, 1992, in the Montgomery County, Pennsylvania Court of Common Pleas. The case was removed to this Court on January 14, 1993. After completing discovery, the parties filed cross-motions for summary judgment.

## II. DISCUSSION

### A. *Subject Matter Jurisdiction*

The Petition for Removal that Federal Kemper filed on January 14, 1993, contained the following pertinent allegations:

6. Petitioner herein is a corporation organized under the laws of the State of Illinois and has its principal place of business in the State of Illinois and is a citizen of Illinois.

7. Plaintiff Dona Horowitz is a *resident* of the Commonwealth of Pennsylvania, resid-ing by her own admission at 808 Edwin Lane, Bryn Mawr, Pennsylvania 19010.

8. Plaintiff Alfred Camner is a *resident* of the State of Florida residing by his own admission at 6855 S.W. 101 Street, Miami, Florida 33156.

9. Plaintiffs' Complaint seek [sic] payment of proceeds under a life insurance policy in an amount of $1 million dollars; therefore, the amount in controversy exceeds $50,000.00.

10. This Honorable District Court would have had original jurisdiction, premised upon a diversity of citizenship, pursuant to 28 U.S.C. Section 1332(a).

*See* Petition for Removal, ¶¶ 6–10 (emphasis added).

It is well-settled that an allegation of residence alone is insufficient to show the existence of diversity jurisdiction. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792, n. 20 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir.1972). In the present case, while the removal petition alleged the correct legal basis for diversity of citizenship, *see* 28 U.S.C. § 1332(a), it incorrectly predicated the allegation on the "residency" and not the "citizenship" of the parties. Upon review of the removal petition, the Court *sua sponte* issued an Order directing the plaintiffs to show cause why Federal Kemper should not be allowed to amend the removal petition to plead the missing allegations of citizenship. In response, Federal Kemper filed an Amended Petition for Removal (docket no. 37) that alleged that "[u]pon information and belief, it is averred that plaintiff Dona Horowitz is a citizen, as well as a resident, of the Commonwealth of Pennsylvania and that the plaintiff Alfred Camner is a citizen, as well as a resident, of the State of Florida." *Id.* at ¶ 5. Mrs. Horowitz now seeks to remand the case to state court. If the Court allows the petition to be amended, the case will proceed in the federal forum. Otherwise, the case must be remanded to state court.[2]

---

2. 28 U.S.C. § 1447(c) provides in pertinent part: [I]f at any time before final judgment it appears that the district court lacks subject mat-ter jurisdiction, the case shall be remanded … A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State

■ It has long been the law that a federal district court has the power to grant leave to amend a removal petition when the petition fails to allege the citizenship of one of the parties. *See Kinney v. Columbia Savings & Loan Ass'n.*, 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903). In *Kinney*, plaintiffs, who were citizens of Utah, brought suit against the defendant, a Colorado corporation, in Utah state court seeking the cancellation of a deed of trust. The defendant removed the action to the federal court for the district of Utah. It failed, however, to allege the plaintiffs' citizenship in the removal petition. The plaintiffs moved to remand the case to state court, but the district court denied the motion and allowed the removal petition to be amended. The Supreme Court affirmed. The Court found that since it was apparent from the removal petition and the deed of trust that plaintiffs were Utah citizens and that there was diversity of citizenship at the time the lawsuit was filed, it was proper to allow the defendant to amend the removal petition to correct the defect. *Id.* at 83–84, 24 S.Ct. at 32–33. While the Third Circuit has not been confronted with this issue, a number of other Circuit Courts of Appeal have recognized the continuing viability of the *Kinney* decision.[3]

■ In the present case it is also apparent from the pleadings that diversity did, in fact, exist at the time the complaint was filed. Mrs. Horowitz alleged in her complaint that she was a resident of Pennsylvania and that Mr. Camner was a resident of Florida. *See* Complaint ¶¶ 1–2. Allegations of a party's residence are prima facie evidence of that party's citizenship. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir.1972). In fact, Mrs. Horowitz has not disputed this prima facie evidence. The Court therefore finds that since it can be determined from the pleadings that there was complete diversity when the suit was filed, Federal Kemper may amend its removal petition to plead the citizenship of the plaintiffs.[4]

court. The State court may thereupon proceed with such case.

3. *See, e.g., Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 562–63 (2d Cir.1978) (citations omitted) ("The district court, nevertheless, has the power to grant leave to amend the complaint and the removal petition to show jurisdiction if that is in the interest of justice, taking into account all of the factors bearing on the court's exercise of its discretion."); *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146–47 (5th Cir.1979) (failure to allege the citizenship of the parties at the time the suit was brought and at the time the removal petition was filed are not "fatal omission[s] which cannot be cured by amendment"), *cert. denied*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980); *Tech Hills II v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968–69, (6th Cir.1993) (where petition for removal failed to allege the citizenship of individual members of plaintiff, a Michigan partnership, Court allowed defendant, a Connecticut corporation, to amend the petition because the "jurisdictional facts d[id] indeed exist, and the parties are in law entitled to invoke the jurisdiction of the federal court"); *Barrow Dev. Co. v. The Fulton Ins. Co.*, 418 F.2d 316, 318 (9th Cir.1969) (where removal petition failed to allege either the place of incorporation or the principal places of business of the corporate parties, to deny amendment would be "to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts") (quoting *Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d 299, 301 (10th Cir.1968)).

4. In her complaint Mrs. Horowitz also alleged that "[t]he defendant Federal Kemper Life Assurance Company is an Illinois Corporation which at all times relevant hereto was doing business within Montgomery County in the Commonwealth of Pennsylvania." *See* Complaint, ¶ 3. In its removal petition, Federal Kemper alleged that it "is a corporation organized under the laws of the State of Illinois and has its principal place of business in the State of Illinois and is a citizen of Illinois." *See* Petition for Removal, ¶ 6. Mrs. Horowitz now claims that since her complaint did not allege Federal Kemper's principal place of business, diversity was not shown and remand is required. The Court disagrees. The failure to allege a corporation's principal place of business in a complaint is a jurisdictional defect that may be amended. *See Wymard v. McCloskey & Co.*, 342 F.2d 495, 497 (3d Cir.) (in non-removal federal court action, plaintiffs, receivers of a corporation in bankruptcy, were given opportunity by court to amend complaint to allege corporation's principal place of business), *cert. denied*, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965). In the present case, Mrs. Horowitz's allegation that Federal Kemper is an "Illinois Corporation" certainly makes it apparent that Federal Kemper is an Illinois citizen, even if the allegation is technically incorrect. Furthermore, the removal petition is technically correct in all respects regarding the allegation of Federal Kemper's citizenship.

Mrs. Horowitz argues that Judge Ludwig's decision in *Fiorentino v. Huntingside Associates,* 679 F.Supp. 3 (E.D.Pa.1987), directing a remand to the state court, is controlling here. The Court disagrees. The *Fiorentino* decision is· distinguishable because in that case the complaint averred that the plaintiffs were residents of Pennsylvania and that the defendant, a limited partnership, had its principal place of business in Philadelphia. Therefore, unlike this case, it was not possible from the face of the complaint to conclude that the parties were of diverse citizenship.[5]

■ The Court concludes that Federal Kemper's August 11 amendment of its removal petition should be allowed and, therefore, that the Court has subject matter jurisdiction to hear this case.

### B. *Standard for Summary Judgment*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), but once it has done so, the non-moving party cannot rest on its pleadings, *see* Fed.R.Civ.P. 56(e). Rather, the non-movant must come forward with facts showing that a genuine issue exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### C. *Plaintiff's Claims*

Plaintiff's complaint states three causes of action. In Count I she alleges that Federal Kemper violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Pa.Stat.Ann., tit. 73, § 201-1—201-9.2 (1968) (amended 1976), and she seeks treble damages, costs, and attorneys' fees. In Count II she alleges that Federal Kemper acted in bad faith in violation of 42 Pa.Cons. Stat.Ann. § 8371 (1990), and she seeks the proceeds of the policy, interest, punitive dam-

---

5. Even if the citizenship of all the parties could not be determined from the face of the complaint, as the Court has held it can in this case, it would be permissible for the Court to look to the removal papers to determine whether diversity of citizenship indeed existed. If that were not the case and the Court were limited to the allegations contained on the face of a complaint in making determinations of diversity jurisdiction, a plaintiff could thwart removal by purposefully failing to allege the defendant's citizenship in the complaint. *See Woolard v. Heyer–Schulte,* 791 F.Supp. 294, 296–97 (S.D.Fla.1992) (if a court could only examine the face of the complaint in making diversity determinations "a defendant's statutory right to removal would be wholly contingent upon the plaintiff's choice of words ... [a plaintiff] could foreclose the possibility of removal simply by omitting any allegation of the defendant's citizenship"). Such a rule would also be undesirable because there are many situations in which the facts necessary for federal diversity jurisdiction (i.e., the citizenship of the parties and the amount in controversy) will not appear in a state court complaint simply because local rules or practice do not require them. *See*

Charles A. Wright, et al., *Federal Practice and Procedure* § 3734 at 542 (2d ed. 1985). The removal petition in this case alleges a proper basis for diversity jurisdiction, except for the allegations that Mrs. Horowitz is a "resident" of Pennsylvania and that Mr. Camner is a "resident" of Florida. *See* Petition for Removal, ¶¶ 6–11. As noted *supra,* since an allegation of residency is prima facie evidence of citizenship, it is apparent from the removal petition that diversity existed at the time the suit was filed and the Court will therefore allow Federal Kemper to amend the petition.

Mrs. Horowitz also cites *Steel Valley Authority v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988), and *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985), as authority for her contention that, in making its determination of diversity, this Court is limited to the allegations contained in her complaint. However, those cases involved fraudulent joinder and the joinder of an indispensable party and are therefore distinguishable from the present case.

ages, costs, and attorneys' fees. In Count III she alleges that Federal Kemper breached their contract and she seeks the proceeds of the policy, incidental and consequential damages, interest, costs, and attorneys' fees. The Court will consider plaintiff's arguments in the order she presents them in her motion and accompanying brief.

### 1. *Breach of contract (count III)*

Plaintiff's first argument is that Mr. Raffetto's alleged failure to deliver the December 20, 1991 amendment to her husband and her as an attachment to the policy precludes Federal Kemper from asserting as a defense any of the misrepresentations made by Dr. Horowitz in either the application or the amendment. The parties disagree as to how Mr. Raffetto delivered the amendment to Dr. and Mrs. Horowitz on December 20, 1991. Since Federal Kemper is the non-moving party, the Court will accept its version of the event as true and will resolve all factual conflicts in its favor.

Federal Kemper alleges that when Mr. Raffetto went to see Dr. Horowitz on December 20, 1991, the amendment in question was "stapled to the policy. Solely in order to facilitate the signing of the amendments, [Mr. Raffetto] *detached them from the policy* in the presence of Dr. Horowitz and Mrs. Horowitz." Def.'s Summ. J. Mot., Ex. R (emphasis added). Federal Kemper further alleges that "[a]fter both Dr. and Mrs. Horowitz signed both amendments, [Mr. Raffetto] put one of the originals inside a sleeve in the pocket binder with the insurance policy on top of the amendment and gave the entire binder to Dr. Horowitz." *Id.* The legal effect of Mr. Raffetto's undisputed failure to reattach the amendment to the policy at the time of delivery is the crucial question in the case.

The parties agree that Pennsylvania law applies. As a federal court sitting in a diversity case, this Court is required to apply the same substantive law as would be applied by a Pennsylvania court. *See Erie Railroad Company v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). This case is controlled by the Insurance Act of 1921, Pa.Stat.Ann., tit. 40, § 441 (1921), which establishes uniform rules for determining whether a document may be considered part of an insurance policy. Section 441 provides in pertinent part that:

> All insurance policies ... in which the application of the insured ... form[s] part of the policy or contract between the parties thereto, or ha[s] any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy ...[6]

The Pennsylvania Supreme Court long ago settled the interpretive issue of what the word "attached" means in the context of Section 441. The rule that has emerged from the two leading cases is that, if an insurance company fails to physically attach the application (or any amendments) to the policy at the time it is delivered, it is barred from asserting as a defense any fraudulent misrepresentations contained in the application or amendments. *See Sandberg v. Metropolitan Life Ins. Co.,* 342 Pa. 326, 20 A.2d 230, 231 (1941); *Frost v. Metropolitan Life Ins. Co.,* 337 Pa. 537, 12 A.2d 309, 311 (1940).

---

**6.** The complete text of Section 441 is as follows:
All insurance policies, issued by stock or mutual insurance companies or associations doing business in this State, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties. Pa.Stat.Ann., tit. 40, § 441 (1921).

In *Sandberg v. Metropolitan Life Insurance Co.*, 342 Pa. 326, 20 A.2d 230, 231 (1941), the plaintiff made a written application to the defendant for a "whole life policy" of insurance at ordinary premium rates. The defendant refused to issue the policy at the ordinary rates, but instead offered to issue it at intermediate rates. The plaintiff agreed to the intermediate rates and executed in writing on one of defendant's forms an amendment to the application where he changed the "plan of insurance to whole life intermediate rates." *Id.* The policy was then issued and the plaintiff paid the first premium. Eight days later, the plaintiff died and defendant refused to pay the claim, alleging that the plaintiff had made fraudulent statements in his application. The application containing the alleged fraudulent statements was attached to the policy, but the amendment to the application was not.

The Court held that since the amendment was not attached, both the application and the amendment had to be excluded from evidence. In explaining its decision, the Court stated:

And that this is a salutary law is evident when it is realized what injustice might result if it were held that only that part of the application need be attached upon which defendant wishes to predicate its defense, since, for example, an unattached part might easily explain apparently fraudulent statements made in the attached part. The insured or beneficiary is entitled to have the whole application before him, if any part of it is to be used against him as a defense ... Since it was not attached to the policy, as required by the Act of 1921, *which is mandatory in its requirement,* no other part of the application may be considered as part of the contract ... If the company has suffered an unnecessary loss it has resulted solely from its own negligence.

*Id.* (emphasis added).

Federal Kemper argues that the statutory objectives of Section 441 were satisfied when Mr. Raffetto placed a copy of the amendment inside the sleeve of the pocket binder that contained the policy (rather than attaching it) and left the pocket binder with Dr. and Mrs.

Horowitz. The Pennsylvania Supreme Court has previously rejected this argument in *Frost v. Metropolitan Life Insurance Co.,* stating:

[W]ould it not require that the plain meaning of the word 'attached' be distorted in order to find that [the amendment] had been attached to the policy by merely folding it and placing it in the policy? ... The law, in justice to all insurers, directs all companies to attach to their policies a copy of the application. Failing in this, a penalty is imposed.

337 Pa. 537, 12 A.2d 309, 311 (1940).

In the same vein, Federal Kemper points for support to language contained in *Syme v. Bankers National Life Insurance Co.,* 393 Pa. 600, 144 A.2d 845 (1958), a case applying Section 441, but not dealing with the attachment issue, where the Pennsylvania Supreme Court stated that "[t]he general intent [of Section 441] was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late." *Id.* 144 A.2d at 849. Federal Kemper contends that the legislature's intent is satisfied if all the documents are kept before the policy-holder at the time of delivery. The Court finds that *Syme* does not control the present case for two reasons. First, it is distinguishable because it does not deal with the attachment issue. Second, the Pennsylvania Supreme Court has made it clear that the legislative intent is satisfied only through physical attachment of the relevant documents to the policy at the time of delivery. *See Sandberg,* 20 A.2d at 231; *Frost,* 12 A.2d at 311.

Federal Kemper also contends that this Court "relaxed" Section 441's attachment requirement in *Ostrov v. Metropolitan Life Insurance Co.,* 260 F.Supp. 152, 159 (E.D.Pa. 1966). This argument is incorrect for several reasons. First, a federal court sitting in diversity may not substitute its own interpretation of a state statute and "relax" the mandates of the state's highest court. *See Erie,* 304 U.S. at 78, 58 S.Ct. at 822 ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state.

And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern ... And no clause in the Constitution purports to confer [the power to declare substantive rules of common law applicable in a state] upon the federal courts."). Second, even if this Court had the power to diverge from the Pennsylvania Supreme Court's interpretation of Pennsylvania law, it did not do in the *Ostrov* case what defendant claims it did. In *Ostrov,* Judge Higginbotham ruled that Section 441 did not preclude an insurer from incorporating by reference certain application documents that were not signed by the insured. *Id.* at 157–58. This holding has no bearing on the statute's attachment requirement. In fact, later in the opinion, Judge Higginbotham recognized the very rule that defendant argues against: "The failure to attach this amendment would, of course, preclude any of the application documents from being introduced into evidence." *Id.* at 163. Finally, perhaps the most practical reason why defendant's reliance on the *Ostrov* decision is misplaced is that it was vacated by the Third Circuit, *see Ostrov v. Metropolitan Life Insurance Co.,* 379 F.2d 829 (3d Cir.1967). In vacating the decision, however, the Third Circuit agreed with Judge Higginbotham that Section 441 "requires that any and all applications 'as signed by the applicant' be attached to the policy itself." *Id.* at 834 (quoting § 441).[7]

Federal Kemper cites three cases, in addition to *Ostrov,* to support its argument that the Section 441 attachment requirement is not absolute. The Court finds all three cases to be distinguishable. In *Prudential Insurance Co. of America v. Pagano,* 407 Pa. 473, 181 A.2d 319 (1962), the Pennsylvania Supreme Court ruled that an insurance company had complied with Section 441 where the insured executed two "Part II's" of an application that were virtually identical and the insurance company attached only one. The

present case is distinguishable in that Dr. Horowitz executed only *one* amendment and the *one* amendment was not attached to the policy.

In *Tables v. Metropolitan Life Insurance Co.,* 202 F.Supp. 547 (W.D.Pa.1962), the insurance company issued two policies to the plaintiff at two different times. The application for the second policy had a clause that incorporated by reference the first application. The plaintiff moved for judgment on the pleadings, arguing that the failure to attach both applications prohibited the company from relying on either application for its fraud defense. The court denied the motion, finding that there was an issue of fact; however, in denying the motion, the court recognized the very rule that Federal Kemper is arguing against, stating that "[i]f ... the application for additional insurance ... did not have attached to it at the time decedent signed it on February 18, 1958, the first application ... then plaintiff's position would appear to be consistent with the Supreme Court decisions and [Section 441] and she would be entitled to judgment." *Id.* at 549. *Tables* therefore provides no support for Federal Kemper's argument.

In the last case cited by Federal Kemper, *Good v. Metropolitan Life Insurance Co.,* 166 Pa.Super. 334, 71 A.2d 805 (1950), the insurance company issued a policy to the insured that had the entire application attached to it, as well as a rider that limited the company's liability when death was caused by flying in an airplane. The plaintiff, the mother of the insured, argued that since the insured's written consent to the rider was not attached to the policy, the company could not rely on the rider as a defense. The court rejected this argument, finding that the written consent was not an "application, constitution, by-law, or other rul[e] of the company," and therefore did not need to be attached to the policy. *Id.* 71 A.2d at 807. The case is distinguishable from the present case because a "written

---

7. Defendant's counsel had a duty under Fed. R.Civ.P. 11 to conduct a reasonable investigation into the law and, by citing a vacated holding to this Court, they breached that duty. *Cf. Terminix Intern. Co., L.P. v. Kay,* 150 F.R.D. 532, 538 (E.D.Pa.1993) (failure to cite controlling authori-

ty violates Rule 11). No harm appearing to have been caused by this breach, the Court will not impose sanctions, but it cautions counsel to undertake their duties under Rule 11 more responsibly in the future.

consent to a rider," unlike an amendment, does not come within the sweep of Section 441.

Finally, the Court admits it was initially troubled by the prospect of a fraud generating a financial windfall for the wrongdoer.[8] Upon closer examination, however, permitting Mrs. Horowitz to collect under the policy is neither inequitable nor unjust. As a matter of public policy, the outcome of the case was preordained by the legislature when it enacted regulatory legislation, prophylactic in nature, that imposes as a penalty for its breach the exclusion of evidence supportive of potentially meritorious defenses. Therefore, the result obtained here is precisely the outcome the Pennsylvania Supreme Court found in *Sandberg* and *Frost* that the legislature intended as a deterrent to violations of Section 441. Viewed in light of the public interest it seeks to promote, it cannot be said that the legislature's calculus of social utility has produced an inequitable result. Nor is the outcome of the case unjust to Federal Kemper. Rather than being an unsuspecting victim of a fraudulent scheme, Federal Kemper was entirely capable of avoiding the result of which it now complains. Section 441's attachment rule has been on the books for

over seven decades and, in fact, the Pennsylvania Supreme Court has emphasized the importance of strictly enforcing the attachment rule in two separate cases which are themselves more than five decades old. Therefore, in light of the ample legal notice provided to Federal Kemper, if it "suffered an unnecessary loss it has resulted solely from its own negligence." *Sandberg*, 20 A.2d at 231.[9]

Since there is no genuine issue of material fact regarding Federal Kemper's failure to attach the amendment to the policy, and further, since Mrs. Horowitz is entitled to judgment as a matter of law, the Court will grant her motion for summary judgment on Count III of her complaint and award her the proceeds of the policy.[10]

## 2. The Unfair Trade Practices and Consumer Protection Law (count I )

Mrs. Horowitz's second argument, contained in Count I of her Complaint, is that Federal Kemper violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Pa.Stat.Ann., tit. 73, §§ 201–1—201–9.2 (1968) (amended 1976). Her claim is based on a September 25, 1992, letter sent by Federal Kemper's claims representative,

---

**8.** All courts must be concerned with one of the "fundamental maxims" of the common law: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188, 190 (1889). In *Riggs*, the question was whether Elmer Palmer, the grandson of Francis Palmer and the legatee of his will, was allowed to inherit under the terms of the will after he had poisoned his grandfather to prevent him from revoking the will. The New York Court of Appeals held that Elmer Palmer could not inherit under the will. The Court found that, even though the statute was silent regarding such a situation, the legislature could not have intended such a result. As noted *supra*, in the present case the Pennsylvania legislature and Supreme Court have decided that the policy of protecting consumers is sufficiently important that it must be enforced even when the result is to exclude meritorious defenses.

**9.** Since the Court has ruled in Mrs. Horowitz's favor on the basis of her Section 441 argument, there is no need to reach her argument that Federal Kemper is bound by the results of its medical examination under Pa.Stat.Ann., tit. 40, § 511(a) (1921) (amended 1937 and 1951). There is also no need to reach Federal Kemper's

rescission argument since its failure to attach the December 20 amendment to the policy prohibits it from asserting as a fraud defense any of the misrepresentations contained in the amendment, Part B of the application (completed on September 26, 1991), or Part F of the application (completed on October 3, 1991). *See Sandberg*, 20 A.2d at 231 (quoting *Fidelity Title & Trust Co. v. Metropolitan Life Ins. Co.*, 305 Pa. 296, 157 A. 614, 616 (1931) ("The omission of a part, which of course includes a supplementary part, operates to exclude the whole.")).

**10.** In Count III, Mrs. Horowitz seeks incidental and consequential damages, interest, costs, and attorneys' fees in addition to the proceeds of the policy. Since she did not move for partial summary judgment on liability only and failed to present any evidence that she suffered incidental and consequential damages as a result of Federal Kemper's breach of the insurance contract, the Court is without a basis to award these types of damages. Furthermore, since the general rule, apart from statute, is that the prevailing party in litigation is not entitled to attorneys' fees, *see* Dan B. Dobbs, *Remedies* § 3.8 (1973), the Court will not award Mrs. Horowitz her attorneys' fees.

Mary Beth Jachec, to Frederick Hanselman, a lawyer for Dr. Horowitz's estate, in which Ms. Jachec notified Mr. Hanselman that Federal Kemper refused to pay Mrs. Horowitz's claim. Mrs. Horowitz argues that the letter was unfair and deceptive because it failed to notify her of the Pennsylvania statutes and court decisions discussed *supra* that establish her right to collect under the policy.

■ The Court will deny Mrs. Horowitz's motion regarding this claim because the UTPCPL does not provide a cause of action for bad faith conduct based upon an insurance company's refusal to pay a claim. *See Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600, 604 (1988) ("The alleged improper refusal to [pay insurance proceeds] does not constitute actionable misfeasance [but merely nonfeasance]. Nonfeasance alone is not sufficient to raise a claim pursuant to the Unfair Trade Practices and Consumer Protection Law."). This Court has consistently adhered to the rule set forth in *Gordon. See, e.g., MacFarland v. U.S. Fidelity & Guar. Co.,* 818 F.Supp. 108, 111 (E.D.Pa.1993) (failure to pay under an insurance contract constitutes nonfeasance and the UTPCPL only provides relief for misfeasance); *Lombardo v. State Farm Mut. Auto. Ins. Co.,* 800 F.Supp. 208, 213 (E.D.Pa.1992) (the refusal to pay benefits to which plaintiff is entitled not actionable under the UTPCPL); *McAlister v. Sentry Ins. Co.,* 1991 WL 102973, at *10 (E.D.Pa. June 11, 1991) (plaintiff cannot proceed under the UTPCPL for insurer's refusal to pay a claim because the UTPCPL targets fraud committed in the commerce of insurance policies rather than in the refusal to honor policies once issued), *aff'd in part and vacated in part on other grounds,* 958 F.2d 550 (3d Cir.1992). *But see Sentry Ins. Co. v. Stillman,* No. 90–2129, 1990 WL 96104 (E.D.Pa. July 5, 1990) (mere bad faith refusal to pay claims is actionable under the UTPCPL). The Court will therefore grant summary judgment in Federal Kemper's favor on Count I of the complaint.

### 3. *Bad faith (count II)*

■ In Count II of her complaint Mrs. Horowitz alleges that Federal Kemper's letter dated September 25, 1992, denying her payment under the policy, was sent in bad faith because Federal Kemper knew that it lacked a legal basis for the denial. She seeks punitive damages, costs, and attorneys' fees pursuant to 42 Pa.Cons.Stat.Ann. § 8371 (1990).

To make out a claim for bad faith "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *D'Ambrosio v. Pennsylvania Nat'l. Mut. Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966, 971 (1981) (refusing to recognize a cause of action for bad faith denial of a claim under Pennsylvania common law). In the present case it is undisputed that Dr. and Mrs. Horowitz knew about Dr. Horowitz's terminal cancer diagnosis on December 20, 1991, and that Dr. Horowitz misrepresented his medical condition to Federal Kemper when he signed the amendment on that day. Def.'s Summ. J. Mot., Ex. F at 77–80, 84–87, 98.

The Court finds that Dr. Horowitz's misrepresentation provided Federal Kemper with a reasonable basis for contesting the claim, even if its analysis of the law turned out to be wrong. *See Kauffman v. Aetna Cas. & Sur. Co.,* 794 F.Supp. 137, 141 (E.D.Pa.1992) (insurance company's motion to vacate arbitration award, while premised on a legally tenuous theory, was insufficient, standing alone, to give rise to an action for bad faith); *American Franklin Life Ins. Co. v. Galati,* 776 F.Supp. 1054 (E.D.Pa.1991) (insurance company's action to rescind policy not in bad faith where insured misrepresented medical history). The Court will therefore deny Mrs. Horowitz's motion regarding her bad faith claim and grant summary judgment to Federal Kemper on Count II of the complaint.

### III. CONCLUSION

The Court will grant summary judgment in favor of the plaintiff on Count III of the complaint and in favor of the defendant on Counts I and II.

An appropriate order shall be entered.

## ORDER

AND NOW, this 30th day of August, 1994, for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that the plaintiff's motion for summary judgment (docket no. 27) is **GRANTED** in part (Count III of the Complaint) and **DENIED** in part (Counts I and II of the Complaint); it is further **ORDERED** that defendant's motion for summary judgment (docket no. 28) is **GRANTED** in part (Counts I and II of the Complaint) and **DENIED** in part (Count III of the Complaint). Judgment in the amount of $1,000,000.00 shall be entered in favor of plaintiff and against defendant on Count III of the Complaint. Judgment shall also be entered in favor of defendant and against plaintiff on Counts I and II of the Complaint.

AND IT IS SO ORDERED.

## JUDGMENT

AND NOW, this 30th day of August, 1994, **JUDGMENT** in the amount of $1,000,000.00 is hereby entered in favor of plaintiff and against defendant on Count III of the Complaint; **JUDGMENT** is also entered in favor of defendant and against plaintiff on Counts I and II of the Complaint.

AND IT IS SO ORDERED.